**Ike Antyon BRODNEX, Appellant**

v.

**The STATE of Texas**

**NO. PD–1087–14**

Court of Criminal Appeals of Texas.

Delivered: March 23, 2016

Raymond K. Fivecoat, Midland, for Appellant.

Carolyn D. Thurmond, Assistant District Attorney, Midland, Lisa C. McMinn, State's Attorney, Austin, for The State of Texas.

## OPINION

Meyers, J., delivered the opinion of the Court, in which Johnson, Keasler, Hervey, Alcala, Richardson, Yeary, and Newell, JJ., joined.

Appellant was charged with the offenses of tampering with physical evidence and possession of a controlled substance after he was stopped by police and found to be carrying crack cocaine. Appellant filed a pretrial motion to suppress the evidence, which the trial court denied. After a bench trial, the trial court acquitted Appellant of the tampering offense but found him guilty of the possession offense. Appellant pled true to three enhancement paragraphs, and the trial court sentenced him to twenty years' confinement. Appellant appealed the denial of his motion to suppress, arguing that the officer did not have sufficient grounds to come into contact with him and that the discovery of the drugs was the result of an excessive pat-down search. *Brodnex v. State*, 11–12–00076–CR, 2014 WL 3639133, 2014 Tex. App. Lexis 7780 (Tex.App.Eastland 2014) (mem. op., not designated for publication). The court of appeals affirmed the trial court's ruling. *Id.* After refusing Appellant's petition for discretionary review, we granted review on our own motion in order to determine whether an officer has reasonable suspicion to detain a suspect based upon observing the suspect walking with another person at 2 a.m. in an area known for narcotics activity and based upon the officer's unsubstantiated belief the suspect is a "known criminal."

## FACTS

Around 2:00 a.m., Officer Zachary Chesworth of the Midland Police Department observed Appellant and a female leave the Deluxe Inn on foot. Officer Chesworth testified that the Deluxe Inn is located in an area known for narcotic activity. Officer Chesworth approached the two individuals on a nearby street, asked them their names and what they were doing, and placed Appellant in handcuffs without placing him under arrest. When Appellant identified himself, Officer Chesworth asked Appellant, "Didn't you just get picked up?" and Appellant replied, "Hell no." Officer Chesworth then had Appellant and his female companion come to the front of the car. The video on Officer Chesworth's patrol car shows that, while lifting Appellant's shirt tail and patting down the exterior of his front pant pockets, Officer Chesworth asked Appellant, "You got anything on you?" to which Appellant replied, "No." Officer Chesworth then asked, "Mind if I check?" and Appellant appeared to reply "uh-uh" again. The officer continued his search, seeming to check all of Appellant's pockets and the area around his waistband. Officer Chesworth found an orange plastic cigar tube protruding from the back of Appellant's waistband and removed it. The cigar tube contained crack cocaine.

Officer Chesworth placed the cigar tube on the front bumper of the police car. As he began to talk to Appellant's female companion, he noticed movement from Appellant, so the officer approached him, and a struggle between the two ensued. Officer Chesworth testified that Appellant had been trying to empty the contents of the cigar tube into the street.

Appellant was charged with possession of a controlled substance and tampering with physical evidence. He filed a motion to suppress evidence, challenging the stop and the search. At the suppression hearing, the video of the stop was played, and

Officer Chesworth testified about his encounter with Appellant. He stated that he originally placed Appellant in handcuffs for officer safety, partly because he believed Appellant was a "known criminal" for "drug possession and things of that nature." However, Officer Chesworth admitted he had no personal knowledge of Appellant's criminal record and knew only what he had been told by other officers. Officer Chesworth also cited, as reasons for placing Appellant in handcuffs, the time of day, the location of the stop, the fact that he was the only officer present, and that he did not know where his closest backup unit was.

The trial court denied Appellant's motion to suppress, and Appellant proceeded to a bench trial where he pled guilty to possession of a controlled substance and not guilty to tampering with evidence. The court found him not guilty of tampering but guilty of possession. Appellant pled true to three enhancement paragraphs and was sentenced to 20 years' imprisonment.

## COURT OF APPEALS

Appellant appealed the trial court's order denying his motion to suppress, arguing that Officer Chesworth did not have sufficient grounds to "come into contact" with Appellant and that the officer's discovery of the cigar tube was the result of an excessive pat-down search. *Id.* at *1–2, 2014 Tex.App. Lexis 7780 at *3–4.

The court of appeals first explained that, while Officer Chesworth was free to approach Appellant and his companion initially, he was required to have a reasonable suspicion of criminal activity prior to handcuffing Appellant and initiating the investigative detention. *Id.* at *2–3, 2014 Tex.App. Lexis 7780 at *6–7. In examining whether Officer Chesworth had reasonable suspicion to detain Appellant, the

court of appeals considered both *Hamal v. State*, 390 S.W.3d 302 (Tex.Crim.App. 2012), and *Crain v. State*, 315 S.W.3d 43 (Tex.Crim.App.2010), and concluded that the "totality of the circumstances" in this case provided Officer Chesworth an objective basis for suspecting that criminal activity was afoot. The circumstances that the court of appeals cited to that support the suspicion of criminal activity included the time of day, the area's general narcotic activity, and the officer's belief that the appellant was a "known criminal." *Brodnex*, 2014 WL 3639133, at *3–4, 2014 Tex. App. Lexis 7780, at *8–9. The court of appeals acknowledged that these three factors do not individually establish reasonable suspicion for an investigative detention, but determined that they may be considered together in analyzing the existence of reasonable suspicion. *See Hamal*, 390 S.W.3d at 308 (holding that prior criminal record may be a factor in determining whether there is a reasonable suspicion); *see also Crain*, 315 S.W.3d at 53 (stating that the time of the day and level of criminal activity in an area may be factors in determining whether a reasonable suspicion exists). The court of appeals also stated in a footnote that "deception regarding one's own criminal record" may be a factor in determining a reasonable suspicion, and that, even though Officer Chesworth did not list it as a reason for his suspicion, because Appellant denied he had been recently picked up, the officer believed him to be deceptive. *Brodnex*, 2014 WL 3639133, at *3, n. 2, 2014 Tex. App. Lexis 7780, at *8, n. 2 (citing *Hamal*, 390 S.W.3d at 308).

Appellant next contended that the cigar tube was discovered only because of an excessive pat-down search. The court of appeals explained that an officer is permitted to conduct a frisk of a person who he has a justifiable belief is armed, in order to

protect himself and those around him, as long as the search is confined in scope to where a weapon might reasonably be discovered. *Id.* at *3–4, 2014 Tex.App. Lexis 7780 at *9–10 (citing *Terry v. Ohio*, 392 U.S. 1, 24, 29, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). The court of appeals, however, concluded that the issue in this case did not concern whether the search was excessive. It held that the video of Officer Chesworth's encounter with Appellant supported the trial court's implied finding that Appellant consented to the search, and that as a result of this consent, the search of Appellant was not limited to a weapons pat-down. *Brodnex*, 2014 WL 3639133, at *4, 2014 Tex.App. Lexis 7780, at *11.

The court of appeals overruled Appellant's issue and affirmed the judgment of the trial court. Appellant filed a petition for discretionary review with this Court. We granted review on our own motion to determine whether the court of appeals erred in affirming the trial court's denial of Appellant's motion to suppress when it held that Officer Chesworth had a reasonable suspicion to detain Appellant.

## ARGUMENTS OF THE PARTIES

Appellant argues that the State failed to establish facts that show that Officer Chesworth's detention of Appellant was based on a reasonable suspicion that Appellant was engaged in criminal activity. He asserts that neither the time of day nor the geographical location of the activity are suspicious in and of themselves. Appellant states that the facts of his case are most similar to those in *Garza v. State*, 771 S.W.2d 549 (Tex.Crim.App.1989), in which we determined that reasonable suspicion did not exist for an officer to detain an individual whom he had heard was "good for" some unspecified burglaries and was a narcotics addict. Appellant believes that the court of appeals's decision is contrary

to our precedent because Officer Chesworth did not articulate any facts that gave rise to his belief that Appellant was, or soon would be, engaged in criminal activity. Therefore, he argues, the detention was illegal and the judgment of the court of appeals should be reversed.

The State argues that the court of appeals was correct in upholding the trial court's denial of Appellant's motion to suppress. It asserts that the time of night, the location being known for narcotic activity, and the officer's knowledge of Appellant as a "known criminal" meet the minimal level to establish an objectively reasonable suspicion for detention. The State points out that the factors are to be considered together, rather than each individually. It requests that we affirm the judgment of the court of appeals.

## STANDARD OF REVIEW

A trial court's denial of a motion to suppress is reviewed under a bifurcated standard of review. *Valtierra v. State*, 310 S.W.3d 442, 447–48 (Tex.Crim.App.2010). We afford almost complete deference to the trial court's determination of historical facts, "especially if those are based on an assessment of credibility and demeanor." *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim.App.2010). However, we conduct a *de novo* review of mixed questions of law and fact that do not hinge on credibility or demeanor determinations, as in the present case. *Id.* Also, as in this case, if the trial court does not make express findings of fact, we view the evidence in the light most favorable to the trial court's rulings, and will assume it made implicit findings that are supported by the record. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim.App.2013). We will sustain the trial court's decision if we conclude that the decision is correct under any applicable theory of law. *Arguellez v. State*, 409

S.W.3d 657, 662–63 (Tex.Crim.App.2013). Although the trial court is the sole factfinder at the suppression hearing, we "review *de novo* whether the totality of circumstances is sufficient to support an officer's reasonable suspicion of criminal activity." *Crain,* 315 S.W.3d at 48–49.

### REASONABLE SUSPICION

 In order to conduct an investigative detention, an officer must have "reasonable suspicion." *Id.* at 52. Under the Fourth Amendment, reasonable suspicion exists where the officer has "specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has engaged or is (or soon will be) engaging in criminal activity." *Garcia v. State,* 43 S.W.3d 527, 530 (Tex. Crim.App.2001). This is an objective standard that disregards the subjective intent of the officer and requires only some minimal level of justification for the stop. *Wade v. State,* 422 S.W.3d 661, 668 (Tex. Crim.App.2013); *Foster v. State,* 326 S.W.3d 609, 614 (Tex.Crim.App.2010). However, the officer must have more than an inarticulable hunch or mere good-faith suspicion that a crime was in progress. *Crain,* 315 S.W.3d at 52 (quoting *Williams v. State,* 621 S.W.2d 609, 612 (Tex.Crim. App.1981)). In deciding whether an officer had a reasonable suspicion, we examine the facts that were available to the officer at the time of the investigative detention. *Davis v. State,* 947 S.W.2d 240, 243 (Tex.Crim.App.1997). If it is determined that there was not a reasonable suspicion on which to detain an individual, then the investigative detention violates the Fourth Amendment. *Id.*

 Officer Chesworth cited the time of day, the area's known narcotic activity, and his belief, based on what other officers had told him, that Appellant was a "known criminal" as the reasons for detaining Appellant. The court of appeals concluded that the totality of these circumstances was sufficient to provide reasonable suspicion that criminal activity was afoot. However, we disagree that these circumstances were enough to support a conclusion that a reasonable suspicion to stop Appellant existed.

The court of appeals relied on *Hamal* and *Crain* in making its decision, but we disagree with its analysis of these prior opinions of this Court. In *Hamal,* the officer stopped the appellant for driving 79 miles per hour in a 65 miles-per-hour zone. 390 S.W.3d at 304. When he approached the car, he observed that the appellant was nervous, had shaking hands, and was looking down at her bag. *Id.* The officer asked whether she had ever been in trouble before and she responded, "No." *Id.* However, the dispatcher informed the officer that the appellant had been previously arrested nine times, including four times for possession of a controlled substance. *Id.* The officer then detained the appellant for a canine sniff, which resulted in the officer finding a glass pipe and methamphetamine. *Id.* at 305. This Court upheld the denial of the appellant's motion to suppress based on the totality of the circumstances which included: time of day, exceeding the speed limit, visible nervousness, prior arrests for drug offenses, including one within seven months of the stop, and appellant's untruthful response to whether she had been in trouble before. *Id.* at 308. However, in the instant case, unlike in *Hamal,* Officer Chesworth had some knowledge of Appellant's criminal history, but there was nothing in the record to support his belief that Appellant was being untruthful about being recently "picked up."

In *Crain,* an officer detained the appellant after he observed him walking late at

night in a residential area where late-night burglaries had been occurring and saw him grab at his waist when the officer's patrol car drove by. 315 S.W.3d at 46. This Court explained that the time of day and level of criminal activity in the area are simply factors to be considered in determining reasonable suspicion, and that neither alone are sufficient. *Id.* at 53. We determined that neither of these factors were enough to raise a suspicion that the appellant was engaged in illegal behavior and, therefore, there was no reasonable suspicion on which to detain the appellant. *Id.* The present case has little more than Officer Chesworth's unsubstantiated belief that Appellant was a known criminal and is, therefore, similar to the circumstances that *Crain* presented.

We agree with Appellant's contention that *Garza* is also instructive in the present case. There, the officer had heard that the appellant was "good for" some burglaries, had seen the appellant's mugshot, had received a description of the appellant's vehicle, and had heard that the appellant was a narcotics addict. 771 S.W.2d at 558–59. We held that, because the officer's information never linked the appellant to a particular crime, and that prior to stopping the appellant the officer did not observe anything to indicate that an offense had been or was being committed, the detention was not supported by sufficient articulable facts. *Id.* Very similar to *Garza,* the officer in this case had no information indicating that Appellant was tied to a specific crime or was in the process of perpetrating one.

When Officer Chesworth stopped Appellant, he had simply seen Appellant walking down the street, at night and in a high-crime location. The only additional information he had when he decided to detain Appellant was Appellant's name and the belief that he was a known criminal. He had limited personal knowledge of Appellant's criminal history or possible linkage to a specific crime, and he did not observe Appellant do anything that would indicate he was engaged in criminal activity. Consistent with our conclusions in both *Crain* and *Garza,* we hold that Officer Chesworth's detention of Appellant was not supported by reasonable suspicion.

## CONCLUSION

Under the totality of the circumstances, we hold that the facts apparent to Officer Chesworth at the time he detained Appellant did not provide him with a reasonable suspicion for the detention. Thus, Appellant was illegally detained, and the crack cocaine that was found in the subsequent search should have been suppressed. We, therefore, reverse the judgment of the court of appeals and remand the case to the trial court for further proceedings consistent with this ruling.

Keller, P.J., concurred.