# PD-1204-17

RECEIVED
COURT OF CRIMINAL APPEALS
**November 7, 2017**
DEANA WILLIAMSON, CLERK

No. _____

## IN THE TEXAS COURT OF CRIMINAL APPEALS

### TRACY LYNN MCGREW, JR.
*Appellant*

v.

### THE STATE OF TEXAS
*Appellee*

**Appealed from Docket No. 09-16-00424-CR**
In the Court of Appeals for the Ninth Judicial District of Texas

**PETITION FOR DISCRETIONARY REVIEW
OF APPELLANT TRACY LYNN MCGREW, JR.**

ASHTON CHRISTOPHER ADAIR
STATE BAR NUMBER: 00795907
MAILING ADDRESS: 7400 GULF FREEWAY, HOUSTON, TEXAS 77017
PHYSICAL ADDRESS: 7400 GULF FREEWAY, HOUSTON, TEXAS 77017
TELEPHONE: 713-777-5297
TOLL FREE FACSIMILE: 844-273-9752
CELL PHONE: 832-221-8759
EMAIL: ASH@HOUSTONTXLAWYER.COM

COUNSEL FOR APPELLANT

# IDENTITY OF JUDGE, PARTIES AND COUNSEL

The trial court judge in this case was Judge Dennis Watson.

The parties to the judgment in this case are Tracy Lynn McGrew, Jr. and the State of Texas.

The names and addresses of all trial and appellate counsel are:

Trial Counsel for the State of Texas:

Anthony Franklyn
Sara Corradi
Assistant District Attorneys
Montgomery County, Texas
207 W. Phillips, Second Floor
Conroe, Texas 77301

Trial Counsel for Appellant Tracy McGrew, Jr.:

Ashton C. Adair
State Bar No. 00795907
7400 Gulf Freeway
Houston, Texas 77017

Appellate Counsel for the State of Texas:

MONTGOMERY COUNTY DISTRICT ATTORNEY, BRETT LIGON
William J. Delmore III
Asst. District Attorney
207 W. Phillips, 2nd Floor
Conroe, TX 77301

Brett W. Ligon
District Attorney
Montgomery County, Texas
207 W. Phillips, Second Floor
Conroe, Texas 77301

i

Philip S. Harris
Assistant District Attorney
Montgomery County, Texas
207 W. Phillips, Second Floor
Conroe, Texas 77301

Appellate Counsel for Appellant Tracy McGrew, Jr.:

Ashton C. Adair
State Bar No. 00795907
7400 Gulf Freeway
Houston, Texas 77017

# TABLE OF CONTENTS

IDENTITY OF JUDGE, PARTIES AND COUNSEL...............................................i

TABLE OF CONTENTS ..........................................................................iii

INDEX OF AUTHORITIES.......................................................................v

STATEMENT REGARDING ORAL ARGUMENT ...............................................1

STATEMENT OF THE CASE......................................................................1

STATEMENT OF PROCEDURAL HISTORY......................................................2

QUESTIONS PRESENTED FOR REVIEW .......................................................2

REASONS FOR REVIEW .........................................................................3

ARGUMENT IN SUPPORT OF REASONS FOR REVIEW ...................................4

I.   The Court of Appeals has Decided an Important Question of State and
     Federal Law in a Way that Conflicts with the Applicable Decisions of the
     Supreme Court of the United States ...............................................4

   A.   The Court of Appeals Erred in Holding that Mr. McGrew's Conduct was
        Sufficiently Distinguishable from that of Innocent People under the Same
        Circumstance ........................................................................4

II.  The Court of Appeals has Erred in its Interpretation of the United States
     Constitution's Fourth Amendment as it Relates to the Concept of
     Reasonable Suspicion to Detain a Citizen.........................................6

   A.   The Court of Appeals Erred in Holding that the Reasonable Suspicion
        Standard can be Met without Identifying a Connection Between a
        Suspect's Behavior and a Particular Crime.......................................6

        i.    Deputy Vasquez's Suspicion was Based on Subjective Views.............6

        ii.   Deputy Vasquez did not Articulate a Connection Between Mr.
              McGrew's Actions and a Crime ...........................................7

iii.    Deputy Vasquez Did Not Articulate a Connection Between Mr. McGrew's Actions and the Violation of a Codified Law ........................8

iv.    The Court's Holding in *Derichsweiler* Identified Reasonable Suspicion of a Specific Crime and Distinctions Between Suspects in Prior and Impending Crimes ..................................................................................9

v.    Reasonable Suspicion of Criminal Activity Must Be Defined as Reasonable Suspicion of a Violation of a Codified Criminal Law ......10

vi.    Geographic Area and Time of Day are Not Sufficient Alone to Establish Justification of Detention .................................................111

III.    The Court of Appeals' Decision is in Conflict with Other Court of Appeals' Decisions on the Same Issue.....................................................12

A.    Other Appellant Courts have Held that Sufficient Articulable Facts Must Link a Suspect with a Particular Crime in Order to Justify a Detention .12

CONCLUSION .................................................................................................13

REQUEST FOR RELIEF .................................................................................133

CERTIFICATE OF SERVICE .............................................................................144

APPENDIX ......................................................................................................155

# INDEX OF AUTHORITIES

**Cases**

*Brodnex v. State*, 485 S.W.3d 432 at 438 (2016).......................................................12

*Brown v. Texas*, 443 U.S. 47, 52 (1979) ....................................................................4

*Comer vs. State*, 754 S.W. 2d 656 ............................................................................1

*Derichsweiler v. State*, 348 S.W.3d 906 at 917 (2011) .............................................9

*Florida v. Royer*, 460 U.S. 491, 500 (1983) ..............................................................4

*Garcia v. State*, 43 S.W.3d 527, 530 (Tex.Crim.App. 2001) ....................................7

*Garza vs. State*, 771 S.W.2d 549, 558-559.............................................................12

*St. George v. State*, 197 S.W.3d 806 at 815 (Worth 2006).......................................7

*Terry v. Ohio*, 392 U.S. 1(1968) ...............................................................................4

*Wade v. State*, 422 S.W.3d 661, at 672 (2013) ........................................................6

**Rules**

Tex. R. App. P. 66.3(a) ...............................................................................................3

Tex. R. App. P. 66.3(c) ...............................................................................................3

Tex. R. App. P. 66.3(d)................................................................................................3

**Constitutional Provisions**
Fourth Amendment of the United States Constitution ..................................... 2, 3, 4

**To The Honorable Court of Criminal Appeals of Texas:**

## STATEMENT REGARDING ORAL ARGUMENT

The undersigned attorney waives oral argument.

## STATEMENT OF THE CASE

This is a petition for discretionary review of the denial of Tracy Lynn McGrew, Jr.'s Motion to Suppress Evidence obtained during the stop of his vehicle on or about March 20, 2016. Appellant Tracy Lynn McGrew, Jr. was arrested and charged with Possession of Marijuana on or about March 20, 2016. *See Court Clerk's Record*, pages 4-5. On July 11, 2016, Appellant filed a Motion to Suppress. *See Court Clerk's Record*, pages 6-10. On October 4, 2016, Appellant filed his First Amended Motion to Suppress which is not included in the Court Clerk's Record. The only difference between Appellant's Original Motion to Suppress and Appellant's First Amended Motion to Suppress is the omission of references to *Comer vs. State*, 754 S.W. 2d 656. Appellant's First Amended Motion to Suppress is included in the Appendix to this Petition, and is referenced by the County Court Judge on page 5, lines 4-5 of the *Court Reporter's Record*.

The Montgomery County Court at Law Number One denied Appellant's Motion to Suppress on October 4, 2016 and signed the Order thereon on November 1, 2016. *See Court Clerk's Record*, page 11. After the denial of the Motion to Suppress, Appellant pled guilty to the charge of Possession of Marijuana on October

1

4, 2016, and was sentenced to 3 days in the Montgomery County Jail (with credit for 3 days) and a $500.00 fine plus court costs of $302.00. *See Court Clerk's Record*, pages 12-14. The Court certified Appellant's right to Appeal the Denial of his Motion to Suppress on October 4, 2016. *See Court Clerk's Record*, page 16. Appellant filed his Notice of Appeal on November 1, 2016. *See Court Clerk's Record*, page 18.

## STATEMENT OF PROCEDURAL HISTORY

The Ninth Court of Appeals affirmed the judgment of the trial court in a decision rendered October 4, 2017. Appellant now files his petition for discretionary review pursuant to Rule 68 of the Texas Rules of Appellate Procedure.

## QUESTIONS PRESENTED FOR REVIEW

1.

Whether a police officer violates a citizen's United States Constitution's Fourth Amendment rights by detaining an individual without being required to articulate a connection between the individual's behavior and a specific crime.

## REASONS FOR REVIEW

### I.

The Court of Appeals has decided an important question of state and federal law in a way that conflicts with the applicable decisions of the Supreme Court of the United States. Tex. R. App. P. 66.3(c).

### II.

The Court of Appeals has erred in its interpretation of the United States Constitution's Fourth Amendment as it relates to the concept of reasonable suspicion to detain a citizen. Tex. R. App. P. 66.3(d).

### III.

The Court of Appeals' decision is in conflict with other Court of Appeals' decisions on the same issue. Tex. R. App. P. 66.3(a).

**ARGUMENT IN SUPPORT OF REASONS FOR REVIEW**

I.    The Court of Appeals has Decided an Important Question of State and Federal Law in a Way that Conflicts with the Applicable Decisions of the Supreme Court of the United States

   A. The Court of Appeals Erred in Holding that Mr. McGrew's Conduct was Sufficiently Distinguishable from that of Innocent People under the Same Circumstance

The Fourth Amendment applies to seizures of the person, including brief investigatory stops of motor vehicles. *Terry v. Ohio*, 392 U.S. 1(1968). Some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity must justify an investigatory stop. *Brown v. Texas*, 443 U.S. 47 (1979). There was no testimony that Appellant was or was about to be engaged in criminal activity. It is the State's burden to articulate facts sufficient to support reasonable suspicion. *Brown v. Texas*, 443 U.S., at 52; see also *Florida v. Royer*, 460 U.S. 491, 500 (1983).

On or about March 20, 2016, Montgomery County Deputy Vasquez observed the Appellant's vehicle backed into a parking stall with its parking lights on with several people in the vehicle. *See Court Reporter's Record* page 9, lines 4-9. The Deputy stated that she observed occupants of the car start to move "around kind of frantically." *See Court Reporter's Record* page 9, lines 18-20. Deputy Vasquez continued down the path of the parking stall driveway and turned left to go back toward Appellant's vehicle. As she turned left, Deputy Vasquez observed the

4

vehicle turn on its lights and leave. *See Court Reporter's Record* page 9, lines 20-25.

Deputy Vasquez followed Appellant's vehicle, and observed several people in the vehicle "shifting around" and observed one person looking back at the Deputy's patrol vehicle and acting as if he was "shifting around and moving stuff around in the backseat." Deputy Vasquez then stopped and detained Appellant. *See Court Reporter's Record* page 10, lines 19-21. The Deputy testified that she would not have stopped Appellant if the occupants in his car had gotten out of the car while in the parking lot. *See Court Reporter's Record* page 10, line 25 - page 11, line 2.

Upon cross-examination the Deputy testified that the occupant's movements and the departure of Appellant and his occupants from the hotel parking lot made her suspicious of Appellant; but she testified that she had "no idea of what crime." *See Court Reporter's Record* page 13, lines 5-22.

Deputy Vasquez testified that the behavior of Appellant and his occupants appeared the same as the behavior of law abiding people. *See Court Reporter's Record* page 16, line 22 – page 17, line 1.

II. The Court of Appeals has Erred in its Interpretation of the United States Constitution's Fourth Amendment as it Relates to the Concept of Reasonable Suspicion to Detain a Citizen

A. The Court of Appeals Erred in Holding that the Reasonable Suspicion Standard can be Met without Identifying a Connection Between a Suspect's Behavior and a Particular Crime

As Deputy Vasquez had stopped Appellant's vehicle and she was still behind Appellant, Deputy Vasquez arbitrarily labels Appellant a "suspicious person," but is unaware of any connection between Appellant and any specific crimes. *See Court Reporter's Record* page 19, line 3 – page 20, line 3. "…[A]n officer and the Government must do more than simply label a behavior as 'suspicious' to make it so. The Government must also be able to either articulate why a particular behavior is suspicious or logically demonstrate, given the surrounding circumstances, that the behavior is likely to be indicative of some more sinister activity than may appear at first glance." *Wade v. State*, 422 S.W.3d 661, at 672 (2013).

i. Deputy Vasquez's Suspicion was Based on Subjective Views

Reasonable suspicion exists where the officer has:

1) specific articulable facts that,

2) when combined with rational inferences from those facts,

3) would lead the officer to reasonably suspect that a particular person has engaged or is engaging in criminal activity [Itemization numbers added by Appellant].

6

See *Garcia v. State*, 43 S.W.3d 527, 530 (Tex.Crim.App. 2001).

Deputy Vasquez is required to articulate a connection between Appellant's behavior and a crime in order to detain said person.

      ii.      Deputy Vasquez did not Articulate a Connection Between Mr. McGrew's Actions and a Crime

A Deputy must satisfy element (3) of the Reasonable Suspicion standard: the officer must reasonably suspect that a particular person has engaged or is engaging in <u>criminal activity</u>. It is unfathomable to make a connection to any criminal activity, without stating which criminal activity may be afoot. It is inherently unfair and subject to individual bias if the standard for detention is an individual officer's subjective belief of what is unusual behavior, without articulating the behavior's connection to a particular crime. The officer "must be able to articulate something more than an inchoate and unparticularized suspicion or hunch." *St. George v. State*, 197 S.W.3d 806 at 815 (Worth 2006).

In the interests of uniformity and fairness, it is important for the officer to identify a particular crime instead of using the generic label "criminal activity." The term "criminal activity" must refer to a violation of the voluminous archives of laws that we are all bound to follow. To be included in the definition, the detaining officer must point to at least one of these laws to possess the authority to detain a citizen. While criminal statutes have titles and labels, they are also comprised of elements which are required to be proven before a person can be convicted. Our system runs

7

this way because it would be unfair, for example, to make it against the law to commit "criminal mischief" without a definition which includes specific elements making certain specific behavior illegal. Otherwise, there would be no standard for acting in our society and each jurisdiction or officer could subjectively define what they believe "criminal mischief" to be. This applies equally to crimes to which we would all have an intuitive definition, such as theft. Indeed, the crime of "theft" is specifically defined with elements so that we can have a uniform and fair guide, with little room for reasonable debate. The same should be true for labeling a person as engaged or is engaging in <u>criminal activity</u>. The term "criminal activity" should be defined.

    iii.  Deputy Vasquez Did Not Articulate a Connection Between Mr. McGrew's Actions and the Violation of a Codified Law

The term "criminal activity" must be defined as a violation of one of our codified laws. If an officer cannot identify which of the laws she suspects a person has violated, she is using the term arbitrarily, applying a subjective standard which will result in unfairness due to her unparticularized suspicion or hunch. In this instance, all of us would be subject to detention for a variety of undefined reasons.

It is not difficult to articulate a suspicion of a violation of one of our many laws. Deputy Vasquez's suspicion was inchoate and an unparticularized hunch or fishing expedition.

8

iv. The Court's Holding in *Derichsweiler* Identified Reasonable Suspicion of a Specific Crime and Distinctions Between Suspects in Prior and Impending Crimes

There are a few opinions that have stated that an officer need not identify a particular crime in order to establish reasonable suspicion. The Holdings on this issue should be overturned. Each of those opinions resulted in the Court opining a reasonable suspicion of a specific crime to justify the detention. For example, in *Derichsweiler v. State,* the Court states of the defendant's actions: "It reasonably suggests someone who was looking to criminally exploit some vulnerability— a weak or isolated individual to rob or an unattended auto to burgle." *Derichsweiler v. State*, 348 S.W.3d 906 at 917 (2011). Clearly the Court in *Derichsweiler* does justify the stop there based upon a reasonable suspicion of the specific crimes of robbery or burglary of an automobile. Regardless of the method or reasoning, it is impossible to define "criminal activity" without at least one reference to a codified law. *Derichsweiler* also makes a distinction between a suspect for a previous crime, and a suspect in an impending crime, indicating that a lower standard to stop a person is warranted to stop an impending crime. *Derichsweiler v. State*, 348 S.W.3d 906 at 917 (2011). Deputy Vasquez never alluded to whether Appellant was a suspect in a previous or impending crime. This type of loose suspicion should not be encouraged.

Reasonable Suspicion of Criminal Activity Must Be Defined as Reasonable Suspicion of a Violation of a Codified Criminal Law

It is well established that an officer must use the totality of the circumstances, including everything that law enforcement knew, to justify reasonable suspicion for a stop. It is also well known that the level of culpability to be proven is far less for reasonable suspicion to stop as opposed to probable cause. However, when the totality of the circumstances renders an officer unable to articulate how said circumstances are related to a particular crime, we are left with a detention that produces the question: which crime, emergency, or matter, is the officer investigating? If the stop is not somehow reasonably articulated to relate to a particular crime or crimes, the result becomes absurd in that the officer can then detain a person for a long time, for the purpose of investigating many possible crimes that could theoretically be committed. For there to be a limit to the scope and duration of a detention, the officer must be investigating particular crimes in which the officer reasonably suspects of the detainee. In order to do so, the officer must be able to identify those particular crimes and the connection to the detainee. If we do not define "criminal activity" as a violation of a codified law, or define "criminal activity" in any way, then any behavior can be viewed as being suspect to "criminal activity," depending on the officer's subjective bias. This leaves the door wide open for unreasonable detentions of innocent people. It is unreasonable to conclude that

10

we can define "criminal activity" without using one or more of the definitions or titles found in our written laws, and it is equally unreasonable to refrain from defining "criminal activity" when the same is a term used to justify a detention. It would otherwise be completely subjective, with no standards, leading to a conflicted system, and opening the door to corruption and/or personal bias of each individual officer and/or Judge. It is better to provide guidelines and definitions when we can, than to leave the definitions and standards open to unending debate. While it is not always easy or practical to provide such guidelines, it is easy in this case. A reasonable suspicion of "criminal activity" should be defined as a reasonable suspicion of a violation of a "codified criminal law."

  vi. Geographic Area and Time of Day are Not Sufficient Alone to Establish Justification of Detention

It was not established during the Motion to Suppress Hearing that this particular area had more occurrence of general crime than other areas or other times of the year, but there were occurrences of criminal mischief, burglary, and theft *See Court Reporter's Record* page 7, lines 16-19 and *See Court Reporter's Record* page 15, lines 2-4). The Deputy was thus patrolling with suspicions for these particular crimes. It is commendable for the Deputy to be suspicious of these crimes and observe the area, but she needed more than what was presented to infringe on a person's Constitutional rights.

11

Deputy Vasquez did not testify about her training or elaborate on how her experience led her to be suspicious of the Appellant herein. There was no testimony that the area where Appellant was stopped was a high drug area. Therefore, the State did not meet its burden of proof to justify the stop of Appellant.

III.  The Court of Appeals' Decision is in Conflict with Other Court of Appeals' Decisions on the Same Issue

A. Other Appellant Courts have Held that Sufficient Articulable Facts Must Link a Suspect with a Particular Crime in Order to Justify a Detention

The *Brodnex* Court, regarding the Ruling in *Garza* stated (with emphasis added in bold by the herein Appellant): In *Garza vs. State*, 771 S.W.2d 549, the officer had heard that the appellant was "good for" some burglaries, had seen the appellant's mugshot, had received a description of the appellant's vehicle, and had heard that the appellant was a narcotics addict. *Garza,* 771 S.W.2d 549 at 558-59. The Court held that, because the officer's information never linked the appellant to a **particular crime**, and that prior to stopping the appellant, the officer did not observe anything to indicate that an offense had been or was being committed, the detention was not supported by sufficient articulable facts. *Id.* Very similar to *Garza*, the officer in *Brodnex v. State* had no information indicating that Appellant was tied to a **specific crime** or was in the process of perpetrating one [and thus his Motion to Suppress should have been granted]. *Brodnex v. State*, 485 S.W.3d 432 at 438 (2016).

12

# CONCLUSION

The balancing act we are analyzing in this case is the difference between a police state where an officer can make an ambiguous contention of labeling an actor "generally suspicious," to implement a stop, depriving a citizen of the freedom of movement and privacy we all cherish, and a State which is based upon the notion of personal freedom for the people to go about their business uninterrupted. There is a point where living under greater power and discretion conferred upon security forces becomes intolerable because you have lost your freedom of movement and privacy, thereby depriving reasonable persons of the dignity of perceived freedom; and without such dignity for some, the loss of the very worth of existence in such a state. A prison, where an inmate can be detained and searched at any time is certainly not a preferable place to live.

# REQUEST FOR RELIEF

Appellant respectfully requests that this Court grant his Petition for Discretionary Review and reverse the decision of the Court of Appeals. The evidence seized should be ordered suppressed, and the conviction based on that evidence should be reversed.

Respectfully submitted,

*Ashton Adair*
/s/ Ashton Adair

Attorney for Appellant
7400 Gulf Freeway
Houston, Texas 77017
Telephone: 713-777-5297
Fax: 844-273-9752
ash@houstontxlawyer.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of November, 2017, a true and correct copy of this Petition for Discretionary Review of the Appellant's Tracy Lynn McGrew, Jr., was served upon The Montgomery County District Attorney's Office by fax to fax number 936-788-8395 and electronic document transmission.

*Ashton Adair*

/s/ Ashton Adair

# APPENDIX

In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-16-00424-CR**

_____

**TRACY LYNN MCGREW JR., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Court at Law No. 1**
**Montgomery County, Texas**
**Trial Cause No. 16-312959**

## MEMORANDUM OPINION

Tracy Lynn McGrew Jr. was charged by information with possession of marijuana in the amount of two ounces or less. Tex. Health & Safety Code Ann. § 481.121 (West 2017). McGrew filed a motion to suppress, and after a hearing, the trial court denied the motion. Thereafter, McGrew pleaded guilty to the offense charged. The trial court assessed punishment at confinement for three days and a

1

$500 fine. In a single issue, McGrew appeals the trial court's denial of his motion to suppress. We affirm.

Hearing on Motion to Suppress

McGrew filed a motion to suppress requesting the court to suppress evidence seized pursuant to the stop, detention, or arrest of McGrew or connected with the investigation of this case, including the controlled substance that was seized. The motion also requested that the court suppress the testimony of Montgomery County Sheriff's Deputy Vasquez or any other law enforcement officers connected with this case and to suppress evidence and testimony relating to McGrew's arrest. The motion argued that the stop of McGrew was unlawful and the evidence should be suppressed because the stop and ensuring arrest were based only on an "inarticulate hunch or speculative suspicion of wrongdoing[]" and not on evidence of a crime.

At the hearing on the motion to suppress, Deputy Erin Vasquez testified that she was on patrol in The Woodlands on March 20, 2016, and that the area had become "a larger focal point for burglaries and criminal mischief[] as well as thefts." Vasquez explained that, about 3:30 in the morning, before she stopped the defendant's car, she had been patrolling the parking lots of hotels, looking for cars that may have been broken into, and "checking for individuals inside the vehicles to see if they were rummaging in vehicles as well." Vasquez testified as follows:

2

When I came through the parking lot I noticed a vehicle with its parking lights on backed into the parking stall. Typically people park into the parking stall, but this one was facing out of the parking stall. So it had backed in and the parking lights were on and there were several people in the vehicle. It's a[n] artificially lit area; however, certain areas are more lit than others.

. . . .

There [were] no other cars in the parking lot with [their] lights on.

. . . .

I observed the vehicle and when I looked into the vehicle I could see several people inside and they all started moving around kind of frantically. I continued down the path of the parking stall driveway and came around and made a left to go back toward that vehicle. At that time as I turned left I could observe the vehicle turn on the engine and turn the lights on and leave the area.

. . . .

I continued to follow the vehicle due to the fact that we've had so many break-ins throughout our hotels. I proceeded to follow the vehicle and I had not checked the remainder of the business parking lot and check to see if there were any broken in vehicles or anything like that. I proceeded to follow the vehicle and as I was following the vehicle, I checked to make sure the vehicle was not stolen, checked the license plate. As I'm doing this there are several people in the vehicle and they were all shifting around and one was like, kept looking back into -- at my patrol car and then started acting [as] if he was shifting around and moving stuff around in the backseat.

Vasquez explained that after she saw people shifting around in the car and looking

backwards, she turned on her emergency lights and stopped the vehicle. According

3

17

to Vasquez, it is not usual for persons in vehicles to be constantly looking backward. Vasquez testified that she "made the stop initially as an investigative stop to make contact with the occupants due to the fact of the criminal activities throughout the area."

On cross-examination, Vasquez testified that the vehicle was parked in an unusual manner, but that she did not believe the individuals in the vehicle had committed a crime "at that time." Vasquez explained that the people had been inside the vehicle for an "ample time" and were unlikely to be "just getting into the vehicle and getting adjusted" prior to driving away. According to Vasquez, the "furtive movements" by the people in the vehicle indicated to her that "it was a suspicious vehicle[]" and she suspected that they had possibly committed a crime. Vasquez explained that, at the time, she did not know what crime they may have committed, but that the area had a recent history of vehicle burglaries, criminal mischief, and thefts. Vasquez testified that she did not stop the vehicle in the parking lot because there were five people in the vehicle, she was in the process of checking to see whether the vehicle was stolen, and she was by herself. According to Vasquez, she regarded the occupants of the vehicle as "suspicious persons[]" and suspects in a "possible crime." Vasquez explained that she finds it suspicious if a person in a vehicle looks backward on a continuing and shifting basis, and that in this instance,

4

18

someone in the vehicle was looking backward more than once. Vasquez described the persons in the vehicle as "nervous[]" and they were "shifting around in the vehicle."

The trial court denied the motion to suppress without issuing findings of fact and conclusions of law. McGrew timely filed his notice of appeal.

## Issue

In a single issue, Appellant argues that the trial court abused its discretion by denying his motion to suppress. According to Appellant, his detention was unlawful under the Fourth Amendment and Article I, section 9 of the Texas Constitution because any suspicions the detaining deputy had that McGrew was engaging in criminal activity were unreasonable. Appellant also argues that because the detaining deputy "was unable to link Appellant with any particular crime," the deputy's stop "was based upon [] inchoate and unparticularized suspicion[.]"

## Standard of Review

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Valtierra v. State*, 310 S.W.3d 442, 447-48 (Tex. Crim. App. 2010). We review the trial court's factual findings for an abuse of discretion, but review the trial court's application of the law to the facts de novo. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). At a suppression hearing, the

5

trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony, and a trial court may choose to believe or to disbelieve all or any part of a witness's testimony. *Valtierra*, 310 S.W.3d at 447; *Wiede v. State*, 214 S.W.3d 17, 24-25 (Tex. Crim. App. 2007) (quoting *State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999)); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).

In reviewing a trial court's ruling, the appellate court does not engage in its own factual review. *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007). We give almost total deference to the trial court's determination of historical facts, "especially if those are based on an assessment of credibility and demeanor." *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010). We give the same deference to the trial court's conclusions with respect to mixed questions of law and fact that turn on credibility or demeanor. *State v. Ortiz*, 382 S.W.3d 367, 372 (Tex. Crim. App. 2012). We review purely legal questions de novo as well as mixed questions of law and fact that do not turn on credibility and demeanor. *State v. Woodard*, 341 S.W.3d 404, 410 (Tex. Crim. App. 2011); *Crain*, 315 S.W.3d at 48. We also review de novo "whether the totality of [the] circumstances is sufficient to support an officer's reasonable suspicion of criminal activity." *Crain*, 315 S.W.3d at 48-49.

6

In the absence of any findings of fact, either because none were requested or none were spontaneously made by the trial court, an appellate court must presume that the trial court implicitly resolved all issues of historical fact and witness credibility in the light most favorable to its ultimate ruling. *State v. Elias*, 339 S.W.3d 667, 674 (Tex. Crim. App. 2011) (citing *Ross*, 32 S.W.3d at 856); *see also Aguirre v. State*, 402 S.W.3d 664, 667 (Tex. Crim. App. 2013) (Cochran, J., concurring) ("in the absence of specific findings, an appellate court's hands are tied, giving it little choice but to 'view the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record[]'") (quoting *Ross*, 32 S.W.3d at 855). We afford the prevailing party the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. *State v. Duran*, 396 S.W.3d 563, 571 (Tex. Crim. App. 2013). We will uphold the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014); *Arguellez v. State*, 409 S.W.3d 657, 662-63 (Tex. Crim. App. 2013); *Ross*, 32 S.W.3d at 855.

7

Applicable Law

"An officer may make a warrantless traffic stop if the 'reasonable suspicion' standard is satisfied." *Jaganathan v. State*, 479 S.W.3d 244, 247 (Tex. Crim. App. 2015). "[A]n officer is generally justified in briefly detaining an individual on less than probable cause for the purposes of investigating possibly-criminal behavior where the officer can 'point to specific and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion.'" *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000) (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). "Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity." *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). This is an objective standard that disregards the subjective intent of law enforcement and requires only some minimal level of justification for the stop. *Terry*, 392 U.S. at 21-22; *Wade v. State*, 422 S.W.3d 661, 668 (Tex. Crim. App. 2013); *Hamal v. State*, 390 S.W.3d 302, 306 (Tex. Crim. App. 2012); *Foster v. State*, 326 S.W.3d 609, 614 (Tex. Crim. App. 2010). However, law enforcement must have more than an inarticulable hunch or mere good-faith suspicion that a crime was in progress. *Crain*, 315 S.W.3d at 52 (quoting *Williams v. State*, 621 S.W.2d

8

609, 612 (Tex. Crim. App. 1981)). In deciding whether law enforcement had a reasonable suspicion, we examine the facts that were available to law enforcement at the time of the investigative detention. *Terry*, 392 U.S. at 21-22; *Davis v. State*, 947 S.W.2d 240, 243 (Tex. Crim. App. 1997). This determination is made by considering the totality of the circumstances, giving the factfinder almost total deference to the determination of historical facts, and reviewing de novo the trial court's application of law to facts not turning on credibility. *Ford*, 158 S.W.3d at 492-93.

In determining whether the totality of the circumstances, viewed objectively, provide a justifiable basis for the stop or detention, we consider the cumulative information known to the detaining officer at the time of the stop rather than whether the officer is "personally aware of every fact that objectively supports a reasonable suspicion to detain[.]" *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011). Individual circumstances may seem innocent enough in isolation, but if they combine to reasonably suggest the imminence of criminal conduct, an investigative detention is justified. *Id.* at 914, 918; *see also Wade*, 422 S.W.3d at 670 (quoting *Crockett v. State*, 803 S.W.2d 308, 311 (Tex. Crim. App. 1991)) ("The facts that an officer relies on to raise suspicion that illegal conduct is afoot need not be criminal in themselves; 'they may include any facts which in some measure render the

9

likelihood of criminal conduct greater than it would otherwise be.'"). Unlike probable cause to justify an arrest, reasonable suspicion does not require a detaining officer to be able to pinpoint a particular crime or penal infraction. *Derichsweiler*, 348 S.W.3d at 916; *see also Illinois v. Wardlow*, 528 U.S. 119, 125 (2000) (conduct that is "ambiguous and susceptible of an innocent explanation[]" may nonetheless justify a detention where the totality of the circumstances indicates ongoing criminal activity).

Analysis

In this case, Deputy Vasquez testified that the stop occurred in the very early hours of the morning in an area where she knew there had been several burglaries of motor vehicles, criminal mischiefs, and thefts. Vasquez also explained that the defendant's vehicle was the only one in the parking lot with lights on, and there were numerous occupants in the vehicle. According to Vasquez, when she first observed the vehicle, it was just sitting in the parking lot, and the people in the vehicle did not appear to be in the process of arriving or leaving. Vasquez testified that, when the people in the vehicle noticed her, they started the vehicle and left the parking lot, and that as she was following them, she saw someone looking back multiple times and people inside the car began shifting around.

10

Considering the totality of the circumstances, we conclude that Deputy Vasquez testified to specific and articulable facts and rational inferences based on those facts related to her stop of McGrew's vehicle. Consequently, her testimony supports the stop. *See Carmouche*, 10 S.W.3d at 328. Vasquez's testimony that she did not suspect McGrew or the occupants of the vehicle of any specific crime does not render the stop unlawful because reasonable suspicion does not require a detaining officer to be able to identify a particular crime. *See Derichsweiler*, 348 S.W.3d at 916. Although time of day and the level of criminal activity were factors that contributed to Vasquez's decision to stop McGrew's vehicle, Vasquez also articulated other factors, including the conduct of the people in the vehicle, that underlay her suspicion and her decision to stop and detain. *See Crain*, 315 S.W.3d at 53 (time of day and level of criminal activity in an area are factors to consider in determining reasonable suspicion but neither is sufficient absent other circumstances); *Kelly v. State*, 331 S.W.3d 541, 549-50 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) ("A person's nervous behavior and furtive movements may constitute factors in determining reasonable suspicion.").

Appellant's brief argues that

> . . . it is not unusual to park a vehicle backed into a stall; and it is not unusual to park with one's parking lights on (hence, the term "parking lights"); it is not unusual to shift around and move items in a

11

25

car; and it is not unusual, in conjunction with all of these actions, to look at a police officer who in turn is observing you.

Appellant has provided no record references or other authority for such assertions. *See* Tex. R. App. P. 38.1(i). Furthermore, the record reflects that Deputy Vasquez did regard it as unusual for a vehicle to be parked backwards, to be sitting with the parking lights on, and for occupants to shift around and look backwards at a following police officer.

Appellant's brief argues that Vasquez did not testify regarding her training and experience relevant to making a determination of reasonable suspicion. Because McGrew did not object to Vasquez's qualifications at the hearing, he has not preserved this issue for appeal. *See* Tex. R. App. P. 33.1. Moreover, Vasquez testified that she had been with the Montgomery County Sheriff's Office since May of 2012, she had been a patrol officer since December of 2013, and she was aware that the area where she encountered McGrew's vehicle had a recent history of burglaries, thefts, and criminal mischief.

In his reply brief, Appellant argues that nighttime activity at a hotel is not suspicious, that frantic movement is not sufficient to establish reasonable suspicion, and that there was no evidence that McGrew drove unreasonably or unlawfully, suggesting flight. It does not matter that some of the observed conduct could be construed as innocent. "[F]or purposes of a reasonable-suspicion analysis, it is

12

26

enough that the totality of the circumstances, viewed objectively and in the aggregate, suggests the realistic possibility of a criminal motive, however amorphous, that was about to be acted upon." *Derichsweiler*, 348 S.W.3d at 917.

Based on the evidence at the suppression hearing, we conclude that, considering the totality of the circumstances, the State met its burden to demonstrate at least a minimal level of objective justification to justify the initial stop. *See Hamal*, 390 S.W.3d at 306. Accordingly, we overrule Appellant's issue and affirm the trial court's order.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on September 14, 2017
Opinion Delivered October 4, 2017
Do Not Publish

Before Kreger, Horton, and Johnson, JJ.

13

Print this page

# Envelope 20510557

## Case Information

| | |
|---|---|
| Location | Court Of Criminal Appeals |
| Date Filed | 11/03/2017 05:04:10 PM |
| Case Number | |
| Case Description | |
| Assigned to Judge | |
| Attorney | Ashton Adair |
| Firm Name | Ashton Adair |
| Filed By | Ashton Adair |
| Filer Type | Not Applicable |

## Fees

| | |
|---|---|
| Convenience Fee | $0.00 |
| Total Court Case Fees | $0.00 |
| Total Court Party Fees | $0.00 |
| Total Court Filing Fees | $0.00 |
| Total Court Service Fees | $0.00 |
| Total Filing & Service Fees | $0.00 |
| Total Service Tax Fees | $0.00 |
| Total Provider Service Fees | $0.00 |
| Total Provider Tax Fees | $0.00 |
| Grand Total | $0.00 |

## Payment

| | |
|---|---|
| Account Name | Adair Pay debit |
| Transaction Amount | $0.00 |
| Transaction Response | |
| Transaction ID | 31836264 |
| Order # | |

## Petition for Discretionary Review

| | |
|---|---|
| Filing Type | EFile |
| Filing Code | Petition for Discretionary Review |
| Filing Description | PETITION FOR DISCRETIONARY REVIEW |
| Reference Number | |
| Comments | |
| Status | Rejected |

### Fees

| | |
|---|---|
| Court Fee | $0.00 |
| Service Fee | $0.00 |

### Rejection Information

| Rejection Reason | Time | Rejection Comment |
|---|---|---|
| | 11/07/2017 | The petition for discretionary review does not contain a certification in compliance |

| Other | 03:53:57 PM | with T.R.A.P. 9.4(i)(3). You have ten days to tender a corrected petition for discretionary review. |

## Documents

| *Lead Document* | Petition for Discretionary Review of Appellant Tracy Lynn McGrew, Junior.pdf | [Original] |