

# IN THE
# TENTH COURT OF APPEALS

## No. 10-20-00098-CR

RANDY DON JOHNSON,

                                 **Appellant**

 **v.**

THE STATE OF TEXAS,

                                 **Appellee**


**From the 54th District Court
McLennan County, Texas
Trial Court No. 20172170C2**


## MEMORANDUM OPINION

The State charged Randy Don Johnson with the offense of possession of a controlled substance, cocaine, with intent to deliver, in an amount of 200 grams or more but less than 400 grams. At trial, Appellant was present for jury selection and when the jury was seated, but he was not show up for the remainder of his trial; the trial continued in Appellant's absence. After the jury found Appellant guilty, it assessed Appellant's punishment at confinement for life. Subsequently, Appellant was found in Dallas and

was returned to McLennan County. After Appellant was returned to McLennan County, he appeared before the trial court, and the trial court sentenced him in accordance with the verdict of the jury. We affirm.

At about 9:00 p.m. on the night of the offense made the subject of this appeal, Waco police were involved in a vehicle pursuit. The police located the vehicle and began to look for someone who had left the vehicle.

Waco Police Department Patrol and Canine Officer Vern Darlington was on duty that night, but he was not directly involved in the pursuit. However, Officer Darlington was patrolling in the immediate area. He testified that it was not uncommon for someone who had "bailed" from a pursued vehicle to phone someone to come and pick them up. In this manner, the driver of the pursued vehicle could, in theory, get out of the area.

When Officer Darlington looked down an alley just a block away from where the other officers had found the pursued vehicle, he saw a vehicle parked half on the alleyway and half off the alleyway. He could see a glow from the dash lights in the parked car; that indicated to him that the vehicle was running. Officer Darlington could also see that the driver's side window was halfway down, and he also saw movement in the vehicle.

Officer Darlington drove into the alley and pulled alongside the parked vehicle. The driver, later identified as Appellant, attempted to hide his face behind the B-pillar of the vehicle. As Officer Darlington rolled down the window of his patrol vehicle and the

wind blew through it, he could smell the slight odor of marijuana; there is no indication that any other vehicles or people were at that location at that time.

When Officer Darlington asked Appellant whether everything was okay, Appellant gave him a blank stare and said nothing; he appeared nervous. When asked a second time, Appellant "kind of stuttered" and answered, "yes." Officer Darlington asked Appellant if he could talk to him "for a second." As Officer Darlington was getting out of his patrol vehicle, Appellant began to quickly drive away. Officer Darlington activated his emergency lights and yelled at Appellant to stop, and he did.

As Appellant was getting out of his vehicle, Officer Darlington noticed that Appellant was bent over and "messing around" in his waist area. Officer Darlington also noticed that Appellant had a black object in his hand. Officer Darlington thought that Appellant might have a gun and the officer "drew down on him." At that point, Appellant "threw his hands up" and began to listen to Officer Darlington's commands.

It turned out that the object that Appellant was holding was a telephone; he dropped it. He had another telephone, and he threw it across the street into the backyard of a residence.

Officer Darlington testified that when Appellant got out of his vehicle, the smell of marijuana was "overwhelming." He was certain that it was coming from Appellant's vehicle. Further, when Officer Darlington was detaining Appellant, the odor was "all over—the odor was all over him as well as coming from the vehicle." Sergeant Mitzel

with the Waco Police Department came to the scene. He also noticed a strong odor of marijuana when he went up to Appellant's vehicle.

When Appellant got out of his vehicle, Officer Darlington also noticed that Appellant's front pockets were bulging with cash to the point that the cash was sticking out of Appellant's pockets. Appellant had $4,539 cash, in various denominations, in his pockets. During a subsequent search of Appellant's vehicle, officers found an additional stash of cash in the trunk of Appellant's vehicle. The total amount of cash found by the officers amounted to about $9,600 in various denominations. Officers also found 232.66 grams of powder cocaine, an undetermined amount of crack cocaine, and scales that contained cocaine residue.

In his first issue on appeal, Appellant maintains that the trial court erred when it denied Appellant's motion to suppress because the initial stop was not based on reasonable suspicion.

A trial court's ruling on a motion to suppress is reviewed for an abuse of discretion. *Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011). In reviewing a ruling on a motion to suppress, we apply a bifurcated standard of review. *Brodnex v. State*, 485 S.W.3d 432, 436 (Tex. Crim. App. 2016); *Martinez*, 348 S.W.3d at 922–23. We afford almost total deference to the trial court's determination of historical facts and of mixed questions of law and fact that turn on the weight or credibility of the evidence. *Brodnex*, 485 S.W.3d at 436; *Martinez*, 348 S.W.3d at 922–23. We review de novo the trial court's determination

of pure questions of law and mixed questions of law and fact that do not depend on credibility determinations. *Brodnex*, 485 S.W.3d at 436; *Martinez*, 348 S.W.3d at 923.

Under *Terry v. Ohio*, 392 U.S. 1 (1968), the police can stop and briefly detain a person for investigative purposes if they have a reasonable suspicion supported by articulable facts that criminal activity may be afoot. *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (citing *Terry*, 392 U.S. at 30); *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011). Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with reasonable inferences from those facts, would lead him to reasonably conclude that a person is, has been, or soon will be engaging in criminal activity. *Derichsweiler*, 348 S.W.3d at 914. This is an objective standard that disregards the subjective intent of the officer making the stop and looks solely to whether an objective basis for the stop exists. *Id*. It also looks to the totality of the circumstances; those circumstances may all seem innocent enough in isolation, but if they combine to reasonably suggest the imminence of criminal conduct, an investigative detention is justified. *Id*. The relevant inquiry is not whether certain conduct is innocent or criminal, but the degree of suspicion that attaches to noncriminal acts. *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997). Whether the totality of the circumstances is sufficient to support an officer's reasonable suspicion is a legal question that we review de novo. *See Madden v. State*, 242 S.W.3d 504, 517 (Tex. Crim. App. 2007).

The facts invoked to justify an investigative detention must support more than a mere hunch or good faith intuition that criminal activity is afoot. *Derichsweiler*, 348 S.W.3d at 916. To support a finding of reasonable suspicion, the specific facts articulated by the detaining officer must show some unusual activity, some evidence that connects the person being detained to the unusual activity, and some indication that the unusual activity is related to a crime. *Martinez*, 348 S.W.3d at 923. However, there is no requirement that the officer suspect that a particular offense is being committed; it is enough if the facts suggest that something of an apparently criminal nature is brewing. *Derichsweiler*, 348 S.W.3d at 916–17.

We will review the trial court's ruling against the backdrop of those standards. We will outline the specific articulable facts available to Officer Darlington on the night of the offense.

As we have pointed out earlier, on the night of this offense, Officer Darlington was aware that other Waco police officers were pursuing a vehicle; he was in the area. It was not uncommon for the driver of a vehicle being pursued to "bail," run from the vehicle, and then to be picked up by someone the driver had called, and to leave the area.

Officer Darlington noticed a vehicle parked in an alley about a block away from where the pursuit ended. The vehicle was parked halfway on the alleyway and halfway off the alleyway. He saw a glow from the dash lights in the vehicle and saw movement

from within the vehicle. The glow from the dash lights indicated to him that the engine on the vehicle was running.

Officer Darlington pulled into the alley and drove up next to the vehicle. The driver's side window of the vehicle was halfway down. Appellant leaned his head back and hid his face behind the B-pillar. When Officer Darlington rolled down the window on his patrol vehicle, he smelled a slight odor of marijuana. There is no indication that anyone else was at that location at that time.

When Officer Darlington asked Appellant whether he was okay, Appellant did not respond but just looked at him with a blank stare and said nothing. When asked a second time, Appellant "kind of stuttered" and answered, "yes." Appellant appeared to be nervous. Officer Darlington asked Appellant if he could talk to him "for a second." As Officer Darlington was getting out of his patrol vehicle, Appellant began to quickly drive away. Officer Darlington activated his emergency lights and yelled at Appellant to stop, and he did.

As Appellant got out of his vehicle, Officer Darlington noticed that Appellant's pockets were bulging with so much cash that the money was sticking out of his pockets. Appellant began to "mess with" his waist area. Officer Darlington saw something black in Appellant's hand and believed that Appellant might have a weapon and he "drew down on" Appellant. However, Appellant had two cell phones; he dropped one and threw the other into someone's backyard. When Appellant and Officer Darlington were

both out of their vehicles, the odor of marijuana was "all over—the odor was all over him as well as coming from the vehicle."

The facts that we have laid out objectively presented Officer Darlington with specific, articulable facts that, when combined with reasonable inferences from those facts, would lead him to reasonably conclude that Appellant is, has been, or soon would be engaging in criminal activity. The totality of the circumstances presented to Officer Darlington reasonably suggested the imminence of criminal conduct and reflected more than a mere hunch or good faith intuition that criminal activity was afoot.

The trial court did not abuse its discretion when it overruled Appellant's motion to suppress. We overrule Appellant's first issue on appeal.

In his second issue on appeal, Appellant claims that the trial court erred when it refused to instruct the jury under Article 38.23 of the Texas Code of Criminal Procedure. Article 38.23(a) provides, in relevant part, "In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained." TEX. CODE CRIM. PROC. ANN. art. 38.23 (West).

Appellant relies on *Madden v. State*, 242 S.W.3d 504 (Tex. Crim. App. 2007) to support his claim that, because there was an issue as to the presence of the odor of marijuana, the trial court should have given his requested jury instruction. In *Madden*,

the Court of Criminal Appeals set forth three factors that must be established before an Article 38.23 instruction is required: "(1) The evidence heard by the jury must raise an issue of fact; (2) The evidence on that fact must be affirmatively contested; and, (3) That contested factual issue must be material to the lawfulness of the challenged conduct in obtaining the evidence." *Id.* at 510.

Three witnesses before the jury were asked about the smell of marijuana. Although not included in his initial report, Officer Darlington testified as to the original smell of marijuana. He also testified about the strong odor of marijuana when Appellant was out of his vehicle. He testified more than once that the odor was not only on Appellant's person but was also coming from Appellant's vehicle. Sergeant Mitzel testified that he smelled a strong odor of marijuana when he first approached Appellant's vehicle. The only other person who was asked about the smell of marijuana was Jennifer Husack, the crime scene technician. She did not smell the odor of marijuana, but she testified that she would not have smelled it due to the amount of time that had elapsed between the initial stop and the time that she arrived on the scene.

We do not agree that there was evidence presented to the jury sufficient to raise a fact issue that required the trial court to instruct the jury under Article 38.23. We overrule Appellant's second issue on appeal.

We affirm the judgment of the trial court.

JIM R. WRIGHT
Senior Chief Justice

Before Chief Justice Gray,
        Justice Smith, and
        Justice Wright[1]
Affirmed
Opinion delivered and filed July 20, 2022
Do not publish
[CRPM]



---

[1] The Honorable Jim R. Wright, Senior Chief Justice (Retired) of the Eleventh Court of Appeals, sitting by assignment of the Chief Justice of the Texas Supreme Court. *See* TEX. GOV'T CODE §§ 74.003, 75.002, 75.003.