**Opinion filed May 23, 2019**



## In The

# Eleventh Court of Appeals

_____

## No. 11-17-00122-CR
_____

## CODY DEVON MCGEE, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 39th District Court**

**Haskell County, Texas**

**Trial Court Cause No. 6836**

## MEMORANDUM OPINION

Cody Devon McGee pleaded guilty to the state jail felony offense of possession of a controlled substance. The trial court, in accordance with the plea agreement, assessed Appellant's punishment at confinement for two years. In a single issue on appeal, Appellant contends that the trial court erred when it denied

Appellant's motion to suppress evidence obtained during a warrantless search of Appellant's person incident to a temporary detention. We affirm.

Before trial, Appellant filed a motion to suppress evidence—including, among other things, 0.235 grams of methamphetamine—obtained incident to a temporary detention. The trial court held a hearing on Appellant's motion to suppress.

Nick Shaginaw, a police officer with the Haskell Police Department, testified for the State. Officer Shaginaw explained that, on the day of the offense, he and another police officer were "patrolling" a residential neighborhood in Haskell around 1:00 a.m. While on patrol, Officer Shaginaw saw two men walking "very close" to the front of a Haskell school building that is located within the neighborhood. That building, the "Head Start" building, is owned by the Haskell Independent School District and is across the street from the Haskell elementary school. The Head Start building and the elementary school are near residences.

When Officer Shaginaw initially saw the two men, it appeared to him as though they had "come out of the front part of the building." Officer Shaginaw specifically saw the two men in the "general vicinity right there by the front door, the foyer area." The two men, according to Officer Shaginaw, subsequently "[t]urned and put their shoulders forward and kind of walked like they didn't want [him] to see who they were." Officer Shaginaw was sure that one of the men, who was later identified as Appellant, had seen him.

Officer Shaginaw thought that it was unusual that the two men were outside the Head Start building at 1:00 a.m. The school was closed, and on his previous patrols, he had never seen anyone in or around the building at that time of the morning. In addition, Officer Shaginaw noticed that the two men were not walking

2

on the edge of the street as a person normally would when traveling through a neighborhood; instead they were "very close" to the building.

Officer Shaginaw pulled his vehicle next to the men to "make contact." He testified that, when he pulled his vehicle next to the men, "they kept walking." Officer Shaginaw felt that this was "unnatural" because "[i]f someone pulls up beside you at 1:00 in the morning, you're going to turn and look at them." Next, Officer Shaginaw "yelled at them out the window to come back towards the vehicle" since he wanted to "see what they were doing there" and ensure that "they weren't breaking into the school." According to Officer Shaginaw, the Haskell high school, around this period of time, had been the target of several burglaries.

The two men complied with Officer Shaginaw's directive and came back. As they approached him, Officer Shaginaw immediately recognized one of the men as Appellant and the other as Braxton Jackson. Officer Shaginaw had recognized Appellant from prior assault cases, "generally" from the "drug world" in Haskell, and also as a suspect in prior burglaries.

At this point, Officer Shaginaw and the officer who was with him got out of their vehicle. Officer Shaginaw saw that a crowbar was protruding out of Appellant's waistband. He thought that this was "odd." When Officer Shaginaw asked Appellant about the crowbar, Appellant told Officer Shaginaw that he had the crowbar for self-defense. Officer Shaginaw removed the crowbar from Appellant's waistband, placed him in handcuffs and patted him down for other weapons. Officer Shaginaw testified that he placed Appellant in handcuffs for officer safety and that, at this point, Appellant was detained but not under arrest.

During the pat-down, Officer Shaginaw felt a hard object in Appellant's left, rear pocket. He asked Appellant what the object was, and Appellant said that it was

3

a sunglass case that contained "a pipe." Officer Shaginaw then removed the sunglass case, looked inside of it, and found, among other things: baggies that contained a crystalline residue, a glass pipe that contained a white crystalline substance, and a baggie that contained a crystalline substance. Officer Shaginaw believed that the crystalline substances and residue that he saw in the sunglass case were methamphetamine. Officer Shaginaw also searched a small black bag on Appellant's person; the bag contained "digital scales" that had crystalline residue on top of the pressure plates of the scales. In addition, Officer Shaginaw searched Appellant's backpack in which he found, among other things, a large twelve-inch blade and a "torch lighter." Lab tests subsequently confirmed that the crustalline substance, which weighed 0.235 grams, contained methamphetamine.

Appellant also testified at the hearing on the motion to suppress. Appellant testified that, on the night of the offense, he was walking from Jackson's home to another home where he was "staying." When defense counsel asked Appellant whether he had come from the Head Start building, Appellant said: "No. I was walking. I was turning towards the building" and "as we seen the headlights coming down the street, we was cutting across the grass, instead of just going straight, and -- because there's only a left or a right turn. And so we was going right," and that is when "he pulled up in front of us and told me to stand off to the side and put my hands on my head." Appellant also explained that he was not walking on the street because he did not want to be hit.

We review a trial court's ruling on a motion to suppress for an abuse of discretion. *Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011). When we review a ruling on a motion to suppress, we apply a bifurcated standard of review. *Brodnex v. State*, 485 S.W.3d 432, 436 (Tex. Crim. App. 2016). We afford almost

4

total deference to the trial court's determination of historical facts and of mixed questions of law and fact that turn on the weight or credibility of the evidence. *Id.*; *Martinez*, 348 S.W.3d at 922–23. We review de novo the trial court's determination of pure questions of law and mixed questions of law and fact that do not depend on credibility determinations. *Brodnex*, 485 S.W.3d at 436. When the trial court makes express findings of fact, we first determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those findings. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). "We uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case." *State v. Iduarte*, 268 S.W.3d 544, 548 (Tex. Crim. App. 2008).

A police officer has reasonable suspicion to detain if he has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that the detained person is, has been, or soon will be engaged in criminal activity. *Wade v. State*, 422 S.W.3d 661, 668 (Tex. Crim. App. 2013); *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011). This is an objective standard that disregards the actual subjective intent of the officer and looks, instead, to whether there was an objectively justifiable basis for the detention. *Wade*, 422 S.W.3d at 668; *Derichsweiler*, 348 S.W.3d at 914. The standard also looks to the totality of the circumstances; individual circumstances may seem innocent enough in isolation, but if the circumstances combine to reasonably suggest the imminence of criminal conduct, an investigative detention is justified. *Wade*, 422 S.W.3d at 668; *Derichsweiler*, 348 S.W.3d at 914. The standard requires only "some minimal level of objective justification" for the stop. *Foster v. State*, 326 S.W.3d 609, 614 (Tex. Crim. App. 2010) (quoting *United*

5

*States v. Sokolow*, 490 U.S. 1, 7 (1989)).  Whether the facts known to the officer amount to reasonable suspicion is a mixed question of law and fact subject to de novo review.  *State v. Mendoza*, 365 S.W.3d 666, 669–70 (Tex. Crim. App. 2012).

Here, Appellant and the State dispute the point in time at which Officer Shaginaw detained Appellant.  Appellant argues that he was detained when Officer Shaginaw "yelled at them out the window to come back towards the vehicle."  The State, however, argues that Appellant was not detained at this point; rather, the State insists that the initial interaction between Appellant and Officer Shaginaw— wherein Officer Shaginaw "yelled" at Appellant to "come back" and Appellant complied—was merely a voluntary encounter.  The State asserts that Appellant was detained only when Officer Shaginaw recognized Appellant as a suspect in prior burglaries and only when Officer Shaginaw saw the crowbar in Appellant's waistband.

Police and citizens generally engage in three distinct types of interactions: consensual encounters, investigative detentions, and arrests.  *Wade*, 422 S.W.3d at 667; *State v. Woodard*, 341 S.W.3d 404, 410–11 (Tex. Crim. App. 2011).  Unlike an investigative detention and an arrest, consensual police-citizen encounters do not implicate Fourth Amendment protections.  *Wade*, 422 S.W.3d at 667; *Woodard*, 341 S.W.3d at 411.  Such encounters occur when an officer approaches a person to ask questions.  *See Florida v. Bostick*, 501 U.S. 429, 434 (1991).  Police officers may ask questions of an individual, ask to see identification, or request consent to search as long as the officer does not convey the message that compliance with their request is required.  *State v. Velasquez*, 994 S.W.2d 676, 678 (Tex. Crim. App. 1999); *Hunter v. State*, 955 S.W.2d 102, 104 (Tex. Crim. App. 1997).

Conversely, an investigative detention occurs when a person yields to the police officer's show of authority under a reasonable belief that he is not free to leave. *Crain v. State*, 315 S.W.3d 43, 49 (Tex. Crim. App. 2010). When we review whether an interaction constituted an encounter or a detention, we focus on whether the officer conveyed a message that compliance with the officer's request was required. *Id.* The question is whether a reasonable person in the citizen's position would have felt free to decline the officer's requests or otherwise terminate the encounter. *Id.*

We think that a reasonable person in Appellant's position would not have believed he was free to leave when Officer Shaginaw "yelled" at Appellant "to come back towards the vehicle." *See U.S. v. Mendenhall*, 446 U.S. 544, 554 (1980) (seizure can occur when officer employs "the use of language or tone of voice indicating that compliance with the officer's request might be compelled"); *Crain*, 315 S.W.3d at 52 (officer's "act of shining his patrol car's overhead lights in the [defendant's] direction, coupled with his request-that-sounded-like-an-order, to 'come over here and talk to me,' caused the [defendant] to yield to [the officer's] show of authority"). A reasonable person in Appellant's position would believe that he had to comply with Officer Shaginaw's order or command. We hold that Officer Shaginaw detained Appellant when he "yelled" at Appellant to "come back towards the vehicle." Therefore, in order for that detention to have been legal, Officer Shaginaw must have had reasonable suspicion that Appellant had engaged in criminal activity or was soon going to engage in criminal activity.

To determine whether Officer Shaginaw had reasonable suspicion, we look to the facts available to him at the time of the detention, including "the time of day" and the "level of criminal activity in an area." *Crain*, 315 S.W.3d at 52–53; *Brodnex*,

7

485 S.W.3d at 438.  We note, however, that "[n]either time of day nor level of criminal activity in an area are suspicious in and of themselves; the two are merely factors to be considered in making a determination of reasonable suspicion." *Crain*, 315 S.W.3d at 53; *Brodnex*, 485 S.W.3d at 438.  Neither fact proves that a suspect is engaged in any sort of criminal offense. *Crain*, 315 S.W.3d at 53. "In order for these facts to affect the assessment of the suspect's actions, the surroundings must raise a suspicion that the particular person is engaged in illegal behavior." *Id.*; *see also Klare v. State*, 76 S.W.3d 68, 75 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd).

When Officer Shaginaw detained Appellant, he had knowledge of the following facts: (1) around 1:00 a.m., it appeared that Appellant and Jackson had walked out of the front part of the Head Start building; (2) the Head Start building, which is owned by the Haskell Independent School District, was closed; (3) there had been prior burglaries at the Haskell high school around this time; (4) on his previous patrols, he had not observed anyone at the Head Start building at that time of night; (5) Appellant and Jackson were not walking on the edge of the street as a person normally would when traveling through a neighborhood; instead, they were "very close" to the building; and (6) Appellant and Jackson "turned and put their shoulders forward and kind of walked like they didn't want [him] to see who they were."[1]

---

[1]The State asks us to consider additional facts in our assessment of reasonable suspicion—namely that Officer Shaginaw recognized Appellant as a prior burglary suspect and observed a crowbar in Appellant's waistband.  We decline to do so.  We only "look at the facts available to the officer at the time of the detention." *Crain*, 315 S.W.3d at 52–53.  Officer Shaginaw learned of these facts only *after* he had detained Appellant.

We hold that, based on the totality of the circumstances, Officer Shaginaw had reasonable suspicion to detain Appellant. *See Tanner v. State*, 228 S.W.3d 852, 857–59 (Tex. App.—Austin 2007, no pet.). While people are free to walk through residential neighborhoods late at night, *see Crain*, 315 S.W.3d at 46, 53–54, Appellant's conduct, the time of night, the location, and Officer Shaginaw's particularized knowledge raised a suspicion that Appellant had burglarized, or was soon going to burglarize, the Head Start building. Therefore, we conclude that the trial court did not abuse its discretion when it denied Appellant's motion to suppress. We overrule Appellant's sole issue.

We affirm the judgment of the trial court.


JIM R. WRIGHT
SENIOR CHIEF JUSTICE

May 23, 2019

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[2]

Willson, J., not participating.

---

[2]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.

9