**Opinion filed March 10, 2022**



## In The

# Eleventh Court of Appeals

_____

## No. 11-20-00082-CR

_____

### DEMARCUS DARRELLE JONES, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the County Court**
**Eastland County, Texas**
**Cause No. 1900117**

### M E M O R A N D U M   O P I N I O N

The State charged Demarcus Darrelle Jones by information with the misdemeanor offense of possession of less than two ounces of marihuana. *See* TEX. HEALTH AND SAFETY CODE ANN. § 481.121(b)(1) (West Supp. 2021). Appellant filed a written motion to suppress evidence seized by officers. At the conclusion of the hearing on the motion to suppress, the trial court denied the motion. Appellant

then entered a plea of guilty to the offense. The trial court found Appellant guilty and, in accordance with the plea agreement, assessed Appellant's punishment at confinement for four days in the Eastland County Jail and a fine of $500.

In one issue, Appellant contends that the trial court erred in denying his motion to suppress evidence based on his contention that the evidence seized from him was obtained as the result of an unlawful pat-down search. He contends that the pat-down search violated the Fourth Amendment of the United States Constitution; Article I, section 9 of the Texas Constitution; and *Terry v. Ohio*, 392 U.S. 1 (1968). We affirm.

*Background Facts*

Russell Reid, a trooper with the Texas Department of Public Safety, was the sole witness at the hearing on the motion to suppress. Trooper Reid testified that he was using his stationary radar on Interstate 20 near mile marker 337 in Eastland County[1] at roughly 10:20 a.m. when he noticed a vehicle approaching without a front license plate. Once the vehicle passed him, Trooper Reid saw that the vehicle's rear tag was paper and illegible because it was "flapping in the wind." Based on the appearance of the paper tag, Trooper Reid initiated a traffic stop.

As Trooper Reid approached the vehicle, he noticed that there were two occupants—the driver and Appellant. Trooper Reid advised the driver that he initiated the stop because of the obscured paper tag and explained that he would issue her a warning for the traffic violation. He placed the driver in the front passenger

---

[1]We take judicial notice that this location is in a rural area. *See Barton v. State*, 948 S.W.2d 364, 365 (Tex. App.—Fort Worth 1997, no pet.) (per curiam) (appellate courts may take judicial notice of geographical facts because they are "easily ascertainable and capable of verifiable certainty").

seat of his vehicle and began running a check on her driver's license. At this time, Trooper Reid learned that her driver's license was suspended.

While Trooper Reid was seated in his patrol vehicle with the driver, he noticed the smell of marihuana coming from her body. The driver denied smoking marihuana, but she granted consent for Trooper Reid to search her vehicle. At some point during this interaction, Trooper West arrived on the scene. It is unclear from the record when he arrived, but Trooper Reid testified that Trooper West was there when the driver provided proof of her insurance. Trooper West remained at the patrol vehicle with the driver.

Trooper Reid returned to the suspect vehicle, where Appellant had remained. Trooper Reid asked Appellant for his driver's license to determine if he could validly drive the vehicle. Appellant responded that he did not have his license with him, but he did have a copy on his phone. Trooper Reid asked Appellant to step out of the vehicle, and after Appellant produced a picture of his license, Trooper Reid ran a check on his license. The check indicated that Appellant "was clear" from any warrants, but it indicated that his license was suspended.

Trooper Reid informed Appellant that he smelled the odor of marihuana on the driver and that she had given him consent to search the vehicle. Trooper Reid testified that he then told Appellant:

> I just wanted to pat him down, make sure he didn't have no weapons on him while I was searching the vehicle because he was standing there beside the vehicle. So, I asked him -- I just told him I needed to pat him down, so I patted him down.

Trooper Reid answered in the affirmative to the prosecutor's follow-up question asking if the pat-down search was for his safety. When asked why he needed to determine whether or not Appellant had any weapons, Trooper Reid testified that he

would have his head "down in the car" while searching it and that he did not "want to get shot in the back of the head" while searching the vehicle. In this regard, Trooper Reid testified that Appellant was standing "pretty close" to the car.

On cross-examination, Trooper Reid testified that he did not think that Appellant was acting suspicious. When Trooper Reid was asked whether he could articulate anything that made him believe Appellant was armed and dangerous, he responded that he could not. However, Trooper Reid testified that he did not know at the time whether Appellant was armed "so that's why I patted him down."

Trooper Reid performed the pat-down and identified a cellphone in Appellant's right pocket. However, Trooper Reid could not identify what was in Appellant's left pocket. He testified that the pocket felt full and that there "was a whole bunch of stuff" in it. Unable to identify the contents of the pocket by plain feel, Trooper Reid asked Appellant what was in the pocket. At this time, Appellant voluntarily emptied the pocket and revealed a small container, some "Cigarillos," and a small plastic bag of a green substance that Trooper Reid "assumed to be marijuana." The bag of marihuana came out of the top of the pocket in plain view as Appellant removed the other items. Trooper Reid testified that he did not ask Appellant to empty the pocket; he only asked Appellant what was inside of his pocket.

The State took the position at the hearing that the "key" factor would be whether Trooper Reid had the right to pat Appellant down. The State argued at the hearing that Trooper Reid conducted the pat down for officer safety and that it was therefore appropriate. The State also argued that Appellant voluntarily exposed the marihuana. Appellant argued that the pat down was not based on reasonable suspicion that Appellant was armed or dangerous and that, but for the pat down, Appellant would not have voluntarily emptied his pocket.

4

*Analysis*

We apply a bifurcated standard of review to a trial court's ruling on a motion to suppress. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); *Furr v. State*, 499 S.W.3d 872, 877 (Tex. Crim. App. 2016); *Brodnex v. State*, 485 S.W.3d 432, 436 (Tex. Crim. App. 2016). We give almost total deference to the trial court's findings of historical fact as long as the record supports its findings. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). When the trial court does not issue findings of fact, we imply findings that support the trial court's ruling if the evidence supports those findings. *State v. Kelly*, 204 S.W.3d 808, 818–19 (Tex. Crim. App. 2006); *Carmouche*, 10 S.W.3d at 327–28. We give deference to the trial court's rulings on mixed questions of law and fact when those rulings turn on an evaluation of credibility and demeanor. *Guzman*, 955 S.W.2d at 89. We review de novo a trial court's application of the law of search and seizure to the facts. *Lerma v. State*, 543 S.W.3d 184, 190 (Tex. Crim. App. 2018); *State v. Sheppard*, 271 S.W.3d 281, 286–87 (Tex. Crim. App. 2008).

The Fourth Amendment prohibits unreasonable searches and seizures, and a stop-and-frisk by law enforcement implicates the Fourth Amendment's protections. *Lerma*, 543 S.W.3d at 190 (citing *Terry*, 392 U.S. at 16). A Fourth Amendment analysis of an officer's stop-and-frisk has two prongs: (1) whether the officer's action was justified at its inception and (2) whether the search and seizure were reasonably related in scope to the circumstances that justified the stop in the first place. *Id.* (citing *Terry*, 392 U.S. at 20). We note that Appellant is not challenging Trooper Reid's basis for initiating the traffic stop. Appellant is also not challenging Trooper Reid's request for Appellant to step out of the vehicle. *See id.* at 191 & n.39 (citing *Maryland v. Wilson*, 519 U.S. 408, 414–15 (1997), for the proposition that "an officer making a traffic stop may order passengers to get out of the car pending

5

completion of the stop"). Instead, this case concerns the reasonableness of Trooper Reid's pat-down search.

As noted by the Texas Court of Criminal Appeals in *Lerma*:

> During the course of a detention, an officer may, in certain circumstances, conduct a pat-down search of an individual to determine whether the person is carrying a weapon. In order to justify a pat-down, the officer must reasonably believe that the suspect is armed and dangerous, such that the officer can point to specific and articulable facts which reasonably lead him to conclude that the suspect might possess a weapon. Reasonable suspicion in this context is based on an objective assessment of the officer's actions in light of the facts and circumstances surrounding the detention. The officer's subjective level of fear is not controlling. The question is whether a reasonably prudent person would justifiably believe that his safety or the safety of others was in danger.

*Id.* at 191 (footnotes omitted). The purpose of the pat-down search is to protect the officer's safety during interactions when suspects are in close quarters with the officer. *Id.* "The Supreme Court has noted that it would be unreasonable to require police officers to take unnecessary risks in performing their duties and that traffic stops are 'especially fraught with danger to police officers.'" *Id.* (quoting *Michigan v. Long*, 463 U.S. 1032, 1047 (1983)).

An officer may not conduct a pat-down search as a matter of routine. *Id.* at 192 (citing *O'Hara v. State*, 27 S.W.3d 548, 553 (Tex. Crim. App. 2000)). However, objective facts can justify a pat-down search even if the officer conducts a pat-down search as a part of a stated routine. *Id.* (citing *O'Hara*, 27 S.W.3d at 554). The relevant inquiry is whether a reasonably prudent person in the officer's situation would be justified in fearing for his safety to the point that a pat-down search for weapons is necessary to assure the officer's safety. *Id.* at 191.

Courts have identified several factors that will justify a pat-down search. *See Seymore v. State*, No. 02-19-00486-CR, 2021 WL 2252751, at *5–6 (Tex. App.—Fort Worth June 3, 2021, pet. ref'd) (mem. op., not designated for publication) (collecting cases). In *Lerma*, the officer was alone conducting a traffic stop; he was outnumbered by the occupants of the vehicle; and he observed the defendant moving around and reaching into his pockets. 543 S.W.3d at 193. In *O'Hara*, the officer was alone in conducting a traffic stop in a rural area; the defendant was in close proximity to the officer; it was the middle of the night; and the defendant had previously been wearing a knife. 27 S.W.3d at 553–54.

Appellant asserts on appeal that Trooper Reid did not have any express, articulable facts to justify the pat-down search of Appellant, emphasizing that Trooper Reid did not feel that Appellant was armed and dangerous. However, Trooper Reid's subjective level of fear is not controlling, but rather we focus on the objective facts and circumstances to determine if a reasonably prudent officer would justifiably believe that his safety was in danger. *See Lerma*, 543 S.W.3d at 191.

The facts in this case are both similar and dissimilar to the facts in *Lerma* and *O'Hara*. Trooper Reid was conducting a roadside traffic stop and vehicle search in a rural area. Additionally, Appellant was in close proximity to Trooper Reid and the vehicle at the time of the search. However, the search did not occur at night and Trooper Reid was not by himself at the time because Trooper West had arrived at the scene. The critical factor in this case is the fact Trooper Reid would be placed in a vulnerable position while searching the vehicle. Because Trooper Reid would be taking his eyes off Appellant while searching the car, coupled with the fact that he was making a roadside traffic stop in a rural area, he had an objectively reasonable concern for his safety that justified his pat-down search of Appellant.

7

We disagree with Appellant's contention that Trooper Reid had a less intrusive option available because he could have required Appellant to stand with Trooper West while Trooper Reid searched the vehicle. Had that occurred, Trooper West would have been outnumbered while Trooper Reid was inside the vehicle searching it. Thus, the trial court did not err in denying Appellant's motion to suppress. We overrule Appellant's sole issue on appeal.

*This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY
CHIEF JUSTICE


March 10, 2022

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.