

# NUMBER 13-21-00396-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

TEXAS DEPARTMENT OF PUBLIC SAFETY,          Appellant,

v.

BENEDICT LOUIS BRYAN JR.,          Appellee.

## On appeal from the County Court at Law No. 2
## of Nueces County, Texas.

## MEMORANDUM OPINION

### Before Justices Benavides, Longoria, and Tijerina
### Memorandum Opinion by Justice Longoria

The Texas Department of Public Safety (the Department) appeals the trial court's reversal of an administrative decision suspending appellee Benedict Louis Bryan Jr.'s driver's license for one hundred and eighty days based on his refusal to provide a blood specimen following his arrest for driving while intoxicated (DWI). *See* TEX. TRANSP. CODE ANN. § 724.035(a)(1). In two issues, which we construe as one, the Department argues

the trial court erred when it found no reasonable basis for the administrative decision. We reverse the trial court's judgment and render judgment reinstating the suspension of Bryan's driver's license.

## I. BACKGROUND

### A. Administrative Law Judge (ALJ) Hearing

#### 1. Documentary Evidence

At a hearing before an ALJ, the Department offered a sworn case report by Corpus Christi Police Officer Donna Gilliam and a DIC-24 "Statutory Warning" form signed by Gilliam, which were admitted into evidence without objection. Gilliam's report indicates that she had conducted a traffic stop of Bryan after observing him use his cell phone while operating his vehicle. Upon contacting Bryan, Gilliam observed that he smelled of alcohol on his breath and person, had glassy red eyes, and spoke with slurred speech. Bryan stated he had consumed four beers prior to the traffic stop. Bryan refused to perform standardized field sobriety tests (SFSTs). Gilliam asked Bryan to exit the vehicle and she observed him to be unsteady on his feet. Gilliam asked Bryan again whether he would like to perform the SFSTs but he refused. Based on her training and experience, Gilliam believed Bryan was intoxicated and had lost control of his mental and physical faculties, and arrested Bryan for DWI. Following his arrest, Gilliam read the DIC-24 statutory warning to Bryan, which states, among other things, the consequences of refusing to submit a blood or breathe specimen requested by a peace officer.[1] Bryan was then asked

---

[1] Section 724.015 of the Texas Transportation Code requires an officer to provide certain information orally and in writing before requesting a specimen of a person's breath or blood for analysis to

to submit a blood specimen, which he refused. The DIC-24 "Statutory Warning" form signed by Gilliam indicates that Bryan refused to sign the form as an acknowledgment that he had received DIC-24 statutory warning and refused to submit a blood specimen.

### 2.    Testimony

Bryan called Gilliam to testify. Gilliam testified that on the evening of January 1, 2021, a little before 10 p.m., she pulled up to a stoplight at an intersection in her marked patrol unit and observed Bryan "on his cell[ ]phone." Bryan was in the driver's seat of a pickup truck and had a female passenger. Gilliam testified that Bryan had the cell phone in his hand but could not recall if it was in his left or right hand. Gilliam also testified that she could not recall whether Bryan had the cell phone up to his ear or whether Bryan was texting or calling on the cell phone. However, Gilliam testified that "I don't stop somebody unless I see them holding their cell phone, whether they be [sic] texting or on their phone" and that "I just know I stopped [Bryan] for a cell phone use." Gilliam then testified regarding Bryan's truck and the following colloquy occurred:

> [Bryan]: Do you know whether it was one of these trucks that's jacked up or has a lift kit on it?
>
> [Gilliam]: I don't remember it being too particularly tall, but everybody's phone lights up. That's usually how I see them at night. That's why it's easy to make these stops.
>
> [Bryan]: Okay. So, in this case, his phone lit up, but you don't recall whether it was in [Bryan's] hand, up to his ear, or where it was.
>
> [Gilliam]: I don't know if it was in front of him or to his ear. It was

---

determine alcohol concentration. TEX. TRANSP. CODE ANN. § 724.015. The DIC–24 is the Department's standard form containing the written warnings required by Section 724.015. *See Martin v. Dep't of Pub. Safety*, 964 S.W.2d 772, 773 (Tex. App.—Austin 1998, no pet.).

somewhere where I could see it in front of him. I don't know if it was to his ear or he was texting. I don't remember that.

Once the traffic light turned green, Bryan proceeded to make a left turn. Gilliam then followed Bryan and conducted a traffic stop. On cross-examination, Gilliam was asked whether she was certain she saw a cell phone in use, and Gilliam replied "Yes."

### 3. ALJ's Decision

Bryan argued that Gilliam had no recollection of the traffic stop and that there was insufficient evidence to support the suspension of his driver's license. The Department argued that "[Gilliam] is certain that she observed [Bryan] using a cell phone, which is prohibited. Whether it was in his left hand, his right hand, he was texting, or calling is irrelevant. [Gilliam] observed the traffic violation, of that she's certain. We've shown what is necessary."

On August 11, 2021, the ALJ signed its order authorizing the Department to suspend Bryan's driver's license for one hundred and eighty days, and included findings of fact and conclusions of law. The ALJ found:

1. On January 1, 2021 reasonable suspicion to stop [Bryan] existed, in that a Texas peace officer observed [Bryan] operating a motor vehicle in a public place in Texas. The officer observed [Bryan] driving with his cell phone in his hand.

2. On the same date, probable cause to arrest [Bryan] existed, in that probable cause existed to believe that [Bryan] was operating a motor vehicle in a public place while intoxicated, because in addition to the facts in No. 1, a Texas peace officer observed [Bryan] had an odor of alcohol, slurred speech, unsteady balance[,] and red, glassy eyes. [Bryan] refused to perform field sobriety tests.

4

3. [Bryan] was placed under arrest and was properly asked to submit a specimen of breath or blood.

4. After being requested to submit a specimen of breath or blood, [Bryan] refused.

Based on its findings, the ALJ concluded that "the Department proved the issues set out in [Texas Transportation Code] § 724.042." The next day, Bryan filed a petition for appeal from the ALJ's decision suspending his driver's license.

## B.    Appeal to the Trial Court

Bryan appealed the ALJ's decision to the trial court alleging that "the evidence was insufficient to establish reasonable suspicion [for Gilliam] to stop [Bryan's] vehicle." At the trial court hearing, the Department argued that Gilliam testified that she observed Bryan using a cell phone while operating a vehicle, that there was reasonable suspicion for the traffic stop based on a city ordinance prohibiting drivers from using a wireless communication device while driving within city limits, that the credibility of the witness is determined by the ALJ and not re-determined on appeal, and that the ALJ had a reasonable basis for his decision. *See* CORPUS CHRISTI, TEX., CODE OF ORDINANCES, ch. 53, art. I, § 53–16(b) (2021). Bryan argued that Gilliam did not have an independent recollection of the traffic stop, that she testified only regarding "what she had in a report" and that her testimony did not indicate where or how the cell phone was used. Bryan further argued that Gilliam's report "only says that [Bryan] used [the cell phone]. Didn't say in what manner it was used. If it was used. If it just turned on. [Gilliam] saw the light. [Gilliam] couldn't tell whether [Bryan] was texting or whatever." Bryan further argued this

5

testimony was insufficient "to sustain the decision that was made by the administrative judge at that hearing."

The trial court reversed the ALJ's decision authorizing the Department to suspend Bryan's driver's license, finding "no reasonable basis for the [ALJ's] decision." This appeal followed.

## II.    STANDARD OF REVIEW & APPLICABLE LAW

The Department argues on appeal that the trial court erred in reversing the ALJ's decision to suspend Bryan's driver's license. Specifically, the Department argues that the record proved by a preponderance of the evidence all the elements required by § 724.042 of the Texas Transportation Code, and that the trial court improperly "substituted its decision for that of the ALJ." *See* TEX. TRANSP. CODE ANN. § 724.042.

A person whose driver's license is suspended following an administrative hearing is entitled to judicial review of that decision. *See* TEX. TRANSP. CODE Ann. § 524.041(a). These decisions are reviewed under the substantial evidence standard, and the reviewing court "may affirm the [administrative] decision in whole or in part." TEX. GOV'T CODE Ann. § 2001.174(1). The reviewing court must reverse or remand the case if the appellant's substantial rights were prejudiced because, among other enumerated reasons, the administrative findings, inferences, conclusions, or decisions were "not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole." *Id.* § 2001.174(2)(E); *see also Tex. Dep't of Pub. Safety v. Guajardo*, 970 S.W.2d 602, 604-05 (Tex. App.—Houston [14th Dist.] 1998, no pet.).

6

The substantial evidence standard requires the reviewing court to decide not whether the ALJ's order was correct, but only whether the record demonstrates some reasonable basis for the agency's action. *See Mireles v. Tex. Dep't of Pub. Safety*, 9 S.W.3d 128, 131 (Tex. 1999). Administrative orders by state agencies are presumed valid and supported by substantial evidence; the party contesting the decision has the burden to prove otherwise. *See Collingsworth Gen. Hosp. v. Hunnicutt*, 988 S.W.2d 706, 708 (Tex. 1998); *City of El Paso v. Pub. Util. Comm'n of Tex.*, 883 S.W.2d 179, 185 (Tex. 1994). The reviewing court must affirm the ALJ's decision if more than a scintilla of evidence supports it, "even if the evidence preponderates against [the decision]," and may not substitute its own judgment on the weight of the evidence on questions committed to the state agency's discretion. *Mireles*, 9 S.W.3d at 131; *see* TEX. GOV'T CODE ANN. § 2001.174.

Whether substantial evidence exists to support the ALJ's decision presents a question of law. *See Dyer v. Tex. Comm'n on Env't Quality*, 646 S.W.3d 498, 505 (Tex. 2022). Because the reviewing court has no discretion in determining what the law is or applying the law to the facts, a court of appeals reviews a trial court's substantial evidence review de novo. *See Tex. Dep't of Pub. Safety v. Valdez*, 956 S.W.2d 767, 769 (Tex. App.—San Antonio 1997, no pet.); *Tex. Dep't of Pub. Safety v. Struve*, 79 S.W.3d 796, 800 (Tex. App.—Corpus Christi–Edinburg 2002, pet. denied).

If a person is arrested and the peace officer making the arrest has reasonable grounds to believe that the person was driving while intoxicated, specimens of the

person's breath or blood may be taken. TEX. TRANSP. CODE ANN. § 724.012(a)(1). If the person refuses to submit to the taking of a specimen, the Department shall suspend the person's driver's license to operate a motor vehicle on a public highway for one hundred and eighty days. *Id.* § 724.035(a)(1). If a person's license is suspended under this chapter, that person may request a hearing on the suspension. *Id.* § 724.041.

At a license suspension hearing, the Department bears the burden of proving: (1) reasonable suspicion or probable cause existed to stop or arrest the person; (2) probable cause existed to believe that the person was operating a motor vehicle in a public place while intoxicated; (3) the person was placed under arrest by the officer and subsequently requested to submit to a breath or blood test; and (4) the person refused to submit to the breath or blood specimen. TEX. TRANSP. CODE ANN. § 724.042.

Section 53–16 of the Corpus Christi Code of Ordinances provides that "an operator of a motor vehicle may not use a wireless communication device while operating a motor vehicle within the city limits." CORPUS CHRISTI, TEX., CODE OF ORDINANCES, ch. 53, art. I, § 53–16(b) (2021). The ordinance further provides exceptions and affirmative defenses that are not applicable to this case. *See id.* § 53–16(c)–(d). No culpable mental state is required to commit an offense under § 53–16(b). *See id.* at § 53–16(f).

### III.    DISCUSSION

### A.    Reasonable Suspicion to Stop

The parties primarily contest whether Gilliam had reasonable suspicion to conduct a traffic stop of Bryan for using his cell phone while driving his vehicle. *See* TEX. TRANSP.

8

CODE ANN. § 724.042(1).

"A police officer has reasonable suspicion to detain if [s]he has specific, articulable facts that, combined with rational inferences from those facts, would lead [her] reasonably to conclude that the person detained is, has been, or soon will be engaged in criminal activity." *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011) (cleaned up). "This standard is an objective one that disregards the actual subjective intent of the arresting officer and looks, instead, to whether there was an objectively justifiable basis for the detention." *Id.* "It also looks to the totality of the circumstances; those circumstances may all seem innocent enough in isolation, but if they combine to reasonably suggest the imminence of criminal conduct, an investigative detention is justified." *Id.* Reasonable suspicion "requires only some minimal level of justification for the stop." *Brodnex v. State*, 485 S.W.3d 432, 437 (Tex. Crim. App. 2016).

The evidence admitted at the ALJ hearing established that Gilliam conducted a traffic stop of Bryan after she observed Bryan using his cell phone while operating his vehicle. In addition, though she could not recall whether the cell phone was in Bryan's right or left hand, or if the cell phone "was to his ear or he was texting," Gilliam testified unequivocally that she saw Bryan use his cell phone, and that Bryan had the cell phone in his hand. Gilliam further testified that the cell phone "was somewhere where I could see it in front of him" and that "everybody's phone lights up. That's usually how I see them at night. That's why its easy to make these stops." The ALJ could have reasonably inferred from these statements that Gilliam had observed Bryan's cell phone screen to be

9

illuminated before she conducted the evening traffic stop at issue in this case. Based on the totality of the circumstances, we hold that Gilliam had reasonable suspicion that Bryan was "us[ing] a wireless communication device while operating a motor vehicle within the city limits" as prohibited by § 53–16 of the Corpus Christi Code of Ordinances. CORPUS CHRISTI, TEX., CODE OF ORDINANCES, ch. 53, art. I, § 53–16(b) (2021); *see also Derichsweiler*, 348 S.W.3d at 914; *Brodnex*, 485 S.W.3d at 437.

Bryan argues a lit cell phone screen "does not equate to 'use' under the statute unless police sees [sic] one reading, writing, or sending an electronic message. Here there is [no] evidence of that." We disagree with Bryan's contention because a violation of § 53–16(b) does not require a person to read, write, or send an electronic message on a cell phone while driving. *See id.*; *but cf.* TEX. TRANSP. CODE ANN. § 545.4251(b) ("An operator commits an offense if the operator uses a portable wireless communication device to read, write, or send an electronic message while operating a motor vehicle unless the vehicle is stopped.").[2]

Likewise, Bryan contends that the record did not establish "the manner of use" of the cell phone, arguing that "[w]hen there is no evidence to establish [the cell phone's] 'use' contrary to the . . . ordinance, there is [no] reasonable suspicion." However, § 53–16(b) does not prohibit a particular "use" of a cell phone. In construing an ordinance, courts use the same rules as when construing a statute and seek to discern the intent of

---

[2] The Department also argues in their brief that Gilliam had reasonable suspicion to detain Bryan for violating Texas Transportation Code § 545.4251(b). Because we conclude that the ALJ could have found that Gilliam had reasonable suspicion to stop Bryan for violating § 53–16(b), we refrain from addressing this argument and Bryan's counter argument related thereto.

10

the enacting body. *Bd. of Adjustment of City of San Antonio v. Wende*, 92 S.W.3d 424, 430 (Tex. 2002). When construing statutes, the plain meaning of words is to be given effect whenever practicable. *See id.*; *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 479 (Tex. 2001) ("A basic rule of statutory construction is that we enforce the plain meaning of an unambiguous statute."). If words and phrases are not defined by the enacting body, the courts should apply the ordinary meaning of the words or phrases. *Monsanto Co. v. Cornerstones Mun. Util. Dist.*, 865 S.W.2d 937, 939 (Tex. 1993). "Use" is not defined in the ordinance; therefore, we apply the term's ordinary meaning. The verb "use" is defined as "to employ for the accomplishment of a purpose." *Use*, BLACK'S LAW DICTIONARY (11th ed. 2019). Gilliam's report and testimony established, at a minimum, that she had reasonable suspicion to stop Bryan for "employ[ing a cell phone] for the accomplishment of a purpose," while driving. Accordingly, the ALJ's finding that "reasonable suspicion to stop [Bryan] existed" was reasonable and supported by substantial evidence in the record. *Mireles*, 9 S.W.3d at 131; TEX. TRANSP. CODE ANN. § 724.042(1).

## B. Remaining Findings Under § 724.042

Having reviewed the record, we conclude the ALJ's remaining findings are reasonable and supported by substantial evidence in the record. *Mireles*, 9 S.W.3d at 131; TEX. TRANSP. CODE ANN. § 724.042(2)–(4). Gillam's report demonstrates that upon conducting a traffic stop of Bryan, Gilliam observed that Bryan smelled of an intoxicating beverage on his breath and person, had glassy red eyes, and spoke with slurred speech.

11

In response to Gilliam's questions, Bryan admitted to consuming four beers prior to the traffic stop and refused to perform SFSTs. Gilliam asked Bryan to exit the vehicle and she observed him to be unsteady on his feet. Gilliam asked Bryan again whether he would like to perform the SFSTs, and he refused. These facts amount to probable cause to arrest Bryan for DWI. *See* TEX. TRANSP. CODE ANN. § 724.042(2); *see also Munoz v. State,* No. 02–12–00513–CR, 2013 WL 4017622, *2–3 (Tex. App.—Fort Worth Aug.8, 2013, no pet.) (mem. op., not designated for publication) (concluding that probable cause existed where appellant refused a breath test, smelled of alcohol, had watery/dilated eyes, was unsteady, and refused to perform SFSTs).

Gillam's report and the "DIC-24 Statutory Warning" form signed by Gillam demonstrate that Bryan was arrested for DWI, was read the DIC-24 statutory warning following his arrest, and was asked to submit a blood specimen; however, Bryan refused to sign the DIC-24 statutory warning and refused to provide a blood specimen. *See* TEX. TRANSP. CODE ANN. § 724.042(3)–(4); *see also Tex. Dept. of Pub. Safety v. Gutierrez*, No. 04–10–00107–CV, 2010 WL 3582395 *1–3 (Tex. App.—San Antonio Sept. 15, 2010, no pet.) (mem. op., not designated for publication) (concluding the ALJ's findings reasonable and were supported by substantial evidence where the trooper's offense report established all the requirements of § 724.042). Because of his refusal to provide a specimen, Bryan was subjected to having his license suspended for one hundred and eighty days. *See* TEX. TRANSP. CODE ANN. § 724.035(a)(1).

## IV.  CONCLUSION

The trial court's order reversing the administrative decision is reversed, and we render judgment reinstating the administrative order suspending Bryan's driver's license for one hundred and eighty days.

NORA L. LONGORIA
Justice

Delivered and filed on the
4th day of May, 2023.