

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-23-00184-CR
_____

CHRISTOPHER JAMES DELEON JR., APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 264th District Court
Bell County, Texas[1]
Trial Court No. 83907, Honorable Paul L. LePak, Presiding

January 8, 2024

## MEMORANDUM OPINION

Before PARKER and DOSS and YARBROUGH, JJ.

Christopher James DeLeon, Jr., Appellant, appeals his conviction for the first-degree felony offense of murder[2] and sentence of twenty-two years' incarceration in the Texas Department of Criminal Justice.  By his appeal, Appellant contends that the trial

_____

[1] This appeal was transferred to this Court from the Third Court of Appeals by docket equalization order of the Supreme Court of Texas.  *See* TEX. GOV'T CODE ANN. § 73.001.

[2] TEX. PENAL CODE ANN. § 19.02(b)(1).

court erred by admitting Appellant's video-recorded statement, and by omitting an instruction in the charge regarding the voluntariness of his confession. We affirm.

## BACKGROUND

Appellant does not contest the sufficiency of the evidence; therefore, only the facts necessary for resolution of the appeal will be recited.

In February of 2021, shortly after midnight, Temple police officers were dispatched to Appellant's residence. When officers arrived, they found Claire Hernandez in the passenger seat of her car with a gunshot wound to her head. Claire was taken by ambulance to a nearby hospital where she was pronounced dead.

At the crime scene, Appellant told officers that he and Claire were sitting in her car waiting for their friend Erica when someone drove by and shot Claire. He told officers that he heard one gunshot, and he did not know which direction the shooter was driving. Appellant stated he did not own a gun. Officers found two spent shell casings inside the car. There was no exterior damage to the car and the windows were intact. All indications were that Claire had been shot inside the car as she sat in the passenger seat. Appellant initially denied drinking any alcohol, but later admitted that he had been drinking earlier in the evening. The discrepancies between the evidence at the scene and Appellant's explanations led to his detention and transportation to the police department for questioning. Because Appellant showed signs of intoxication and had difficulty staying awake, he was unable to be interviewed for approximately twelve hours. Ultimately, Appellant was charged with Claire's murder.

At trial, forensic pathologist Dr. Chester Gwin testified that Claire sustained a contact or near-contact wound to the left side of her forehead. The handgun used to kill Claire was found by law enforcement beside a mattress leaning against the outside of Appellant's house. The handgun, identified as a 9mm Glock, was loaded; there was a live round in the chamber and two bullets in the magazine. A firearm analyst, Ryan Mudd, testified that the bullet recovered from Claire's brain was fired from the weapon found outside Appellant's house. Additionally, the two shell casings found inside the car were fired from the same gun.

At the end of the first day of testimony, the trial court considered the admissibility of Appellant's videotaped interview with Temple Police Detective John Leach. After a hearing outside the presence of the jury, the trial court denied the motion to suppress and ruled that Appellant's statements were admissible. Detective Leach testified that he attempted to interview Appellant at the police station, but he was unable to do so because of Appellant's apparent intoxication and inability to stay awake. Detective Leach was able to interview Appellant at the jail after he "sobered up." The interview was admitted into evidence and the video was played for the jury.

In the interview, Appellant stated that he had the gun when he came out of his house to meet Claire.[3] He could not remember how the gun came out of his pocket, but he admitted that he squeezed the trigger and the gun went off. Appellant said he blacked out and could not remember what happened to the gun after Claire was shot. According

---

[3] According to Appellant, he found the gun on the previous Monday.

3

to Appellant, both he and Claire had been drinking "a little bit" before she was shot. He had also consumed a Xanax tablet "hours before" but he was not high.

At the conclusion of the trial on the merits, Appellant did not request a jury instruction on the voluntariness of his statement to Detective Leach, nor did he object to the absence of such an instruction in the jury charge. The jury found Appellant guilty, and the trial court sentenced Appellant to twenty-two years in the Texas Department of Criminal Justice. Appellant timely filed this appeal.

**ANALYSIS**

Issue One: Denial of Motion to Suppress

In his first issue, Appellant contends that the trial court erred by failing to suppress his video-recorded interview with Detective Leach. He argues that admission of his recorded oral statement violated both federal law under *Miranda,* and state law under article 38.22 of the Texas Code of Criminal Procedure. *See* TEX. CRIM. PROC. CODE ANN. art. 38.22; *Miranda v. Arizona*, 384 U.S. 436, 498–99, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). We review a trial court's ruling on a motion to suppress for an abuse of discretion. *Martinez v. State,* 348 S.W.3d 919, 922 (Tex. Crim. App. 2011). We apply a bifurcated standard of review, affording almost total deference to a trial judge's determination of historical facts and reviewing the trial court's application of law to the facts de novo. *Brodnex v. State*, 485 S.W.3d 432, 436 (Tex. Crim. App. 2016).

We first address the State's argument that Appellant waived any issue regarding the admission of his recorded statement by declaring he had "no objection" to the admission of such evidence at trial. Preservation of error is a systematic requirement on

appeal. *Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009). Though a trial court's denial of a prior motion to suppress normally preserves a complaint for review, the situation changes when the complainant states, at trial, that he has no objection to the evidence. *Thomas v. State*, 408 S.W.3d 877, 885 (Tex. Crim. App. 2013). Stating "no objection" may, but does not necessarily, result in the abandonment of any complaint regarding the admission of the evidence. *See id.* (whether statement of "no objection" forfeits earlier preserved error is "context-dependent"). If the record plainly demonstrates the defendant did not intend to abandon his earlier objection to the admission of the evidence and the trial court did not construe the statement as such, then the reviewing court should not regard it as waived. *Id.* If the record does not make it clear, then we should consider the issue waived. *Id.* at 885–86.

From the record before us, it appears that the trial court granted Appellant's request for a motion in limine regarding the testimony of Detective Leach, who interviewed Appellant at the jail. Appellant did not file a written motion to suppress and the legal basis of his motion is unclear. A hearing was held at the conclusion of the first day of testimony after State's counsel stated, "Your Honor, I think it's time for the motion."[4] The trial court held a hearing on the "motion" outside the presence of the jury. Detective Leach testified that he attempted to interview Appellant at the police department, but Appellant "appeared to be under the influence of some sort of substance and was having trouble staying awake." He placed Appellant on a felony hold and delayed the interview to later that afternoon. The second time he met Appellant was at an interrogation room at the jail

---

[4] According to a docket entry, Appellant's counsel presented an oral motion to exclude "confession/statement which was subject of motion in limine."

approximately twelve hours after the first attempt. According to Detective Leach, Appellant had "sobered up" and was able to stay awake and speak coherently. He did not appear to be intoxicated. Appellant was given his *Miranda* warnings and he acknowledged each warning individually. When asked if he understood the warnings, Appellant stated that he did. Detective Leach opined that Appellant waived his rights under the warnings and "freely and voluntarily" submitted to the interrogation. Appellant's counsel's brief cross-examination confirmed he answered "yes" to each individual question asked when the *Miranda* warnings were given and reaffirmed his willingness to talk to the detective. Appellant's counsel did not elicit a response indicating Appellant's statements were involuntary.[5] The trial court admitted the video recording of Appellant's interview with Detective Leach for the purpose of the hearing and announced it would hear argument on the motion the next morning before the jury returned.

> When trial resumed the following morning, the trial court asked for argument.
>
> Trial counsel: Judge, I would say just depends on the evidence. The Court has already seen and heard from yesterday's testimony. And in addition to that, I just ask the Court to grant the motion pled.[6]
>
> State: Your, honor, there's absolutely no evidence on those, any of those exhibits of any force, pressure, coercion, promise, anything that would render a confession involuntary. In fact[,] even though the detective could have talked to the defendant while he was intoxicated, the detective chose not to. The defendant was read his rights off of a card. Freely and voluntarily waived those rights and wanted to tell his story. This is a voluntary and knowing confession.
>
> Trial Court: All right. I am denying the motion to suppress and to the extent that we have had a motion in limine this has been approaching the bench

---

[5] In his brief, Appellant concedes he is not claiming that any law enforcement official intimidated, coerced, or deceived him in securing his waiver of his *Miranda* rights.

[6] Again, the record does not contain a written motion to suppress. Counsel's response to the trial court is vague and tantamount to no argument at all.

outside the presence of the jury and statements of the defendant may be referenced at this time in evidence or argument.

. . .

Trial Court: Anything further on the record at this time?

Trial counsel: No, your honor.

When the videotaped interview was offered at trial, Appellant's counsel stated, "No objection." The trial court replied, "Very good," and the interview was played for the jury.

In our view, Appellant's affirmative, "No objection, Judge" when the recorded interview was offered, evinces an intent to abandon Appellant's earlier opposition to the admission of his interview. *See Thomas*, 408 S.W.3d at 885–86 ("no objection" statement should be considered in context of entirety of record; statement waives previously preserved error unless the record "plainly demonstrates" that defendant and trial court understood otherwise). Moreover, the record indicates that, given the opportunity to note his objection to the trial court's ruling, Appellant's counsel stated he had nothing further. Notably, in admitting the recorded interview, the trial judge's response of "very good" indicates the trial court's understanding that Appellant relinquished any objection to the admissibility of his interview. *See Harper v. State,* 443 S.W.3d 496, 498 (Tex. App.—Texarkana 2014, pet. ref'd) (record reveals nothing contradicting Appellant's intention to relinquish his previous challenge to the evidence and nothing inconsistent with the trial court's acceptance of that relinquishment). There is nothing in the record where Appellant informed the trial court that his acquiescence to the admission of the interview was subject to any objection under *Miranda* or article 38.22 of the Code of Criminal Procedure.

Therefore, we conclude that Appellant waived his complaint regarding the trial court's denial of his motion to suppress. We overrule Appellant's first issue.[7]

Issue Two:  Voluntariness Instruction

In his second issue, Appellant contends the trial court committed egregious error by failing to *sua sponte* instruct the jury as to the voluntariness of his recorded statement pursuant to article 38.22 of the Texas Code of Criminal Procedure.

A trial judge has an absolute duty to prepare a jury charge that accurately sets out the law applicable to the case, whether requested by the defendant or not. *Oursbourn v. State*, 259 S.W.3d 159, 179–81 (Tex. Crim. App. 2008). When a statute, such as article 38.22, requires an instruction under certain circumstances, that instruction is part of the "law applicable to the case," and the trial court commits error if it fails to include a written instruction in the jury charge as required under the statute. *Id.* at 180–81.

Purported error in a jury charge is reviewed using a two-step process. *Kirsch v. State,* 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). First, we determine whether error exists. Second, we determine whether the error was sufficiently harmful to require reversal based on the test set forth in *Almanza.*[8] *Id.* The issue of error preservation is not relevant until harm is assessed because the degree of harm required for reversal

---

[7] The granting of a pre-trial motion in limine will not by itself preserve error. *Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003). For error to be preserved with regard to the subject matter of the motion in limine, it is necessary that an objection be made at the time when the subject is raised during trial and an adverse ruling secured from the trial court. *Fuller v. State*, 253 S.W.3d 220, 232 (Tex. Crim. App. 2008). Here, Appellant did not object when the recorded interview was offered. As such, Appellant failed to preserve any error for review.

[8] *See Almanza v. State,* 686 S.W.2d 157, 171–72 (Tex. Crim. App. 1985) (en banc) (holding that if no proper objection was made at trial, an accused will obtain a reversal only if the error is so egregious and created such harm that he was denied a "fair and impartial trial.").

8

depends on whether the error was preserved. *Id.* Where, as here, the defendant fails to raise a timely objection to the omission of a voluntariness instruction, reversal is required only if the error was fundamental in the sense that it was egregious and created such harm that the defendant was deprived of a fair and impartial trial. *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015); *Oursbourn,* 259 S.W.3d at 165, 174.

Jury charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Villarreal,* 453 S.W.3d at 433. Egregious harm is a "high and difficult standard" to meet. *Id.* A determination of egregious harm must be made on a case-by-case basis and be adequately supported by the record. *Id.* In examining the record to determine whether charge error is egregious, we consider: (1) the entirety of the jury charge itself, (2) the state of the evidence, including contested issues and the weight of probative evidence, (3) the arguments of counsel, and (4) any other relevant information revealed by the trial record as a whole. *Id.*; *Gelinas v. State*, 398 S.W.3d 703, 705–06 (Tex. Crim. App. 2013).

Here, Appellant contends that the voluntariness of his videotaped statement to Detective Leach was litigated before the trial court when it considered his motion to suppress. We disagree. During the hearing on the oral motion, Appellant's counsel did not cite article 38.22 or address the language of the statute as grounds for his motion, did not argue that the statement made by Appellant was involuntary, and did not seek or secure rulings from the trial court regarding whether Appellant's statement was involuntary. *See* TEX. CRIM. PROC. CODE ANN. art. 38.22, § 6. When the video statement was admitted into evidence and played for the jury, Appellant's counsel did not object on the basis of article 38.22 or otherwise argue that the statement was involuntary.

9

Moreover, Appellant did not present evidence before the jury that his statement was involuntary. As such, a voluntariness instruction was not warranted. *See Watts v. State*, 371 S.W.3d 448, 464 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ("For the instruction to be warranted, the record must also contain some evidence presented at trial that would permit a reasonable jury to conclude that the statement was not voluntary."). Without any evidence that the statement was involuntary, we cannot say that article 38.22 ever became the law applicable to the case. *Id.* at 464–65. We overrule Appellant's second issue.

CONCLUSION

Having overruled both of Appellant's issues on appeal, we affirm the judgment of the trial court.

Judy C. Parker
Justice

Do not publish.