**Opinion filed August 29, 2025**



# In The

# Eleventh Court of Appeals

_____

## No. 11-24-00120-CR

_____

## CHARLES KELLY CARROLL, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 213th District Court**

**Tarrant County, Texas**

**Trial Court Cause No. 1753159**

## M E M O R A N D U M   O P I N I O N

A grand jury indicted Appellant, Charles Kelly Carroll, for the first-degree felony offense of arson causing bodily injury. *See* TEX. PENAL CODE ANN. § 28.02(a), (d)(1) (West 2019). After the trial court denied his motion to suppress statements that he made to law enforcement, and pursuant to a negotiated plea agreement between the parties, Appellant pled guilty to the charged offense. Consistent with the parties' agreement, the trial court accepted Appellant's guilty

plea, sentenced him to imprisonment in the Institutional Division of the Texas Department of Criminal Justice for six years, and certified that Appellant reserved his right to appeal the trial court's denial of his motion to suppress.

In his sole issue on appeal, Appellant challenges the trial court's denial of his motion to suppress.[1]  We affirm.

## I. *Factual Background*

While investigating a warehouse fire, Fort Worth Police Detective Michael O'Neil was able to identify Appellant as a suspect in the arson.  On October 13, 2022, Detective O'Neil and another officer located Appellant walking down a sidewalk, and they approached him to talk about the fire.  The officers were in an unmarked pickup.  During this encounter, the officers did not exhibit any firearms, nor did they restrain Appellant with handcuffs.  Further, the officers repeatedly told Appellant that he was not being detained or placed under arrest and that he was free to leave at any time.

When the officers asked Appellant to go with them to the police station, Appellant indicated that he would but only with his attorney.  Appellant stated multiple times that he wanted his attorney to be present for any questioning at the police station; however, he continued to participate in the encounter.  The officers did not disagree with Appellant that he was entitled to have an attorney present, and they continued to remind him that he was not being detained and that he could leave at any time.  At some point, Appellant's girlfriend arrived and spoke with Detective O'Neil.  She and Appellant eventually left together ending the sidewalk encounter.

Detective O'Neil returned to his office and later obtained an arrest warrant for Appellant.  Appellant was taken into custody that same day.  After Appellant arrived

---

[1]Pursuant to Misc. Docket Order No. 24-9013 issued by the Texas Supreme Court on March 21, 2024, this appeal was transferred to us from the Second Court of Appeals.  Therefore, as the transferee court, we must decide the issues raised in this appeal in accordance with the precedent of the Second Court of Appeals if its precedent conflicts with ours.  *See* TEX. R. APP. P. 41.3.

at the police station, Detective O'Neil read Appellant the required warnings. Appellant indicated to the officers that he had spoken to his attorney and that his attorney said he should not talk to them. Detective O'Neil asked Appellant if he would like to hear what the detective had to say, and Appellant responded that he did. Detective O'Neil then advised Appellant of the basis for his arrest. After he was indicted, Appellant filed a motion to suppress all statements that he made to law enforcement.

After hearing evidence, the trial court denied Appellant's motion to suppress. Subsequently, Appellant pled guilty to the offense of arson. On appeal, Appellant argues that the trial court erred when it denied his motion to suppress because the initial sidewalk encounter was a custodial interrogation, and, because it was, he was not given the required warnings at that time. Appellant further asserts that the officers denied his request for his attorney to be present during any questioning.

II. *Standard of Review*

In reviewing a trial court's ruling on a motion to suppress, we apply a bifurcated standard of review. *Brodnex v. State*, 485 S.W.3d 432, 436 (Tex. Crim. App. 2016); *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013); *Martinez v. State*, 348 S.W.3d 919, 922–23 (Tex. Crim. App. 2011). We afford almost total deference to the trial court's determination of historical facts, especially when a trial court's fact findings are based on an evaluation of credibility and demeanor. *Brodnex*, 485 S.W.3d at 436; *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). The same deference is afforded the trial court with respect to its rulings that concern the application of the law to questions of fact and to mixed questions of law and fact if the resolution of those questions turn on the weight or credibility of the evidence. *Brodnex*, 485 S.W.3d at 436; *see Lerma v. State*, 543 S.W.3d 184, 190 (Tex. Crim. App. 2018). When, as in this case, the trial court makes explicit fact findings, "we

3

determine whether the evidence, (viewed in the light most favorable to the trial court's ruling) supports these fact findings." *State v. Hardin*, 664 S.W.3d 867, 872 (Tex. Crim. App. 2022) (citing *State v. Kelly*, 204 S.W.3d 808, 819 (Tex. Crim. App. 2006)).

At a hearing on a motion to suppress, the trial court is the exclusive trier of fact and judge of the credibility of the witnesses. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). As such, the trial court may choose to believe or to disbelieve all or any part of a witness's testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); *Johnson v. State*, 803 S.W.2d 272, 287 (Tex. Crim. App. 1990). We will sustain the trial court's ruling on a motion to suppress if it is supported by the record and if it is correct under any applicable theory of law. *Lerma*, 543 S.W.3d at 190; *Ross*, 32 S.W.3d at 855–56.

### III. *Analysis*

Appellant argues that he was in custody during the sidewalk encounter with Detective O'Neil and the other officer and that he was not given the required warnings pursuant to *Miranda* and Article 38.22 of the Texas Code of Criminal Procedure. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966); TEX. CODE CRIM. PROC. ANN. art 38.22 §§ 2(a), 3 (West Supp. 2024). He also contends that his right to the presence of an attorney was violated during the sidewalk encounter because he requested to have his attorney present. Indeed, if Appellant was in custody during the sidewalk encounter, he was entitled to receive the required warnings—including a warning that he had the right to have his attorney present during any questioning. *See* CRIM. PROC. art 38.22 §§ 2(a)(3), 3(a). Therefore, we must first determine whether Appellant was in custody as he claims during the sidewalk encounter.

Custodial interrogation is the questioning by law enforcement officers after a person has been taken into custody or deprived of his freedom of action in any significant way. *Miranda*, 384 U.S. at 444; *Herrera v. State*, 241 S.W.3d 520, 525

(Tex. Crim. App. 2007); *Wilson v. State*, 442 S.W.3d 779, 784 (Tex. App.—Fort Worth 2014, pet. ref'd). To determine whether an individual was in custody, a court must examine all the circumstances surrounding the interrogation; however, the ultimate inquiry is simply whether there was a formal arrest or a restraint of the person's freedom of movement to the degree associated with a formal arrest. *Stansbury v. California*, 511 U.S. 318, 322 (1994); *Estrada v. State*, 313 S.W.3d 274, 294 (Tex. Crim. App. 2010); *Wilson*, 442 S.W.3d at 784. A person is in custody only if, under the circumstances, an objectively reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest. *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996); *Wilson*, 442 S.W.3d at 784.

There are at least four general situations where a person's detention may constitute custody: (1) when the person is physically deprived of his freedom of action in any significant way; (2) when a law enforcement officer tells the person that he cannot leave; (3) when law enforcement creates a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted; and (4) when there is probable cause to arrest and law enforcement officers do not tell the person that he is free to leave. *Dowthitt*, 931 S.W.2d at 255; *Wilson*, 442 S.W.3d at 784. In the first three situations, the restriction on freedom of movement must amount to a degree associated with an arrest rather than an investigative detention. *Dowthitt*, 931 S.W.2d at 255; *Wilson*, 442 S.W.3d at 784.

In addressing the sidewalk encounter in its Findings of Fact and Conclusions of Law, the trial court found that Detective O'Neil's testimony at the hearing on Appellant's motion to suppress was credible. The trial court further found that during the sidewalk encounter, Appellant was free to leave at any time. The trial court noted that although Appellant stated during the encounter that he wanted his attorney to be present if he went to the police station, he continued to converse with

5

the officers and never agreed to go to the police station. As such, the trial court concluded that Appellant was not in custody during the sidewalk encounter.

While Detective O'Neil testified that he believed Appellant was a suspect in the warehouse fire, being the focus of a criminal investigation does not transform the sidewalk encounter into a custodial interrogation. *See Wilson*, 442 S.W.3d at 784. Detective O'Neil's bodycam video from the sidewalk encounter showed that the officers approached Appellant and asked to speak with him. The officers did not handcuff Appellant or in any way physically restrain him. Further, the officers repeatedly told Appellant that he was not being detained or arrested and that he was free to leave at any time, which he did.

The bodycam video corroborates Detective O'Neil's testimony and supports the trial court's finding that although Appellant indicated that he wanted his attorney to be present for any questioning at the police station, he continued to speak voluntarily with the officers during the sidewalk encounter. The officers never told Appellant that he could not speak to an attorney. To the contrary, Detective O'Neil offered to let Appellant use his cell phone to call his attorney. Detective O'Neil repeatedly told Appellant that he was not under arrest and that he only wanted Appellant to have the opportunity to tell his side of the story. Here, the evidence supports a determination that a reasonable person would not feel that his freedom of movement had been significantly restricted; in fact, Appellant ultimately left the sidewalk encounter on his own accord.

The evidence, when viewed in the light most favorable to the trial court's ruling, supports the trial court's conclusion that Appellant was not in custody during the sidewalk encounter. *See Kelly*, 204 S.W.3d at 818–19; *Wilson*, 442 S.W.3d at 785. Moreover, Appellant's right to the presence of an attorney was not implicated because he was not in custody during the encounter. *Estrada*, 313 S.W.3d at 296. Thus, the trial court did not err when it denied Appellant's motion to suppress. *See*

6

*Wilson*, 442 S.W.3d at 786–87.  Accordingly, we overrule Appellant's sole issue on appeal.

## IV.  *This Court's Ruling*

We affirm the trial court's judgment.

W. STACY TROTTER

JUSTICE

August 29, 2025

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.